John M'Kim, Jr., and Benjamin Comegys, executors of the last will and testament of John Davis, deceased; Theoderick Bland, and Sarah, his wife, Elizabeth Glen Davis, and Jacob Davis, infants under the age of twenty-one years by said Sarah, their mother and next friend, complainants, against Alexander Fulton, James Fulton, John Lowry, Robert Gant, James Houston, Josiah Nichol, Thomas Humes, David Deaderick, Thomas E. Waggamen, and George Michael Deaderick, defendants.
This was a bill in equity upon the following case: —
The bill states a copartnership in trade between the deceased, John Davis and Alexander Fulton, which was carried on in the city of Baltimore, in the State of Maryland, for several years previous to the second of November, 1798, when, by articles of agreement, the copartnership was dissolved by mutual consent. This agreement or instrument of writing expressed the terms upon which the dissolution took place, the primary motive appeared to be the indisposition of Davis, who was then sick, and likely to die. It was provided that, in case Davis should *Page 122 
survive his indisposition, the agreement was to be void.
Davis executed his will on the fourth of the same month, and died on the eighth. The agreement assigned over all Davis's interest in the house to Fulton, including all the stock on hand as well as debts. Fulton, on his part, bound himself to indemnify Davis against all debts which the firm then owed, and to pay Davis $36,150 by instalments. The bill charged that there were divers debts due from the firm at the time of its dissolution, which Fulton has not paid; that he has collected debts due to the firm, and applied them to the new firm of Alexander and James Fulton; that since the establishment of the copartnership with his brother, James Fulton, he has evaded the payment of the debts due from the house of Davis and Fulton, with a view, as it is charged, of staving off those debts, so as to onerate the representatives of Davis with the whole of them, amounting, as supposed, to about 3,000l. sterling money. The bill further charges, that the new firm of Alexander and James Fulton traded upon the old stock of Davis and Fulton, and that James did not bring any thing into trade with his brother Alexander. It is also stated that all the defendants, except the two Fultons, are citizens of this State, and that they are indebted to Alexander and James Fulton; that if suffered to pay to this house they will be applied, as formerly, to the payment of the debts of the Fultons, and not those of Davis and Fulton; that the representatives of Davis will have them to pay in case of the insolvency of Fulton. The prayer of the bill is that Fulton may discover, and be decreed to pay the amount of the debts due from Davis and Fulton; that the debtors of Alexander and James Fulton resident in this State may be enjoined from paying to the Fultons with such other or further relief, as the Court may deem proper.
Alexander Fulton put in an answer, which is entitled the joint and separate answer of Alexander and James Fulton, though sworn to by Alexander only.
This answer admits the copartnership of Davis *Page 123 
and Fulton; that it commenced in November, 1795, and was dissolved in November, 1798, in the manner and on the terms expressed in the articles. It further states, that, during the greater part of the time they were concerned in trade, he resided in Europe and Davis in Baltimore; that he knew but little of the state of the concern, except from the information of Davis. That Davis made representations to him respecting the state of their affairs, and that it was under erroneous impressions, occasioned by these representations, that he made the contract exhibited in the articles of agreement. It further states that Davis fraudulently imposed upon him in saying there was due upon the books more than $56,000 in good debts, and that he has had to pay about $17,000 debts due from the company, of which he did not receive any kind of information from Davis; that there is now due from Davis and Fulton about $14,000, and still due that house upwards of $60,000; but that the greater part of these are bad debts.
Fulton also states, that, owing to the difficulties in which he was involved by the firm of Davis and Fulton, and paying the debts of that house, the new firm of Alexander and James Fulton had become insolvent. In consequence of this insolvency, on the eighth of November, 1801, they assigned all their property to Luke Tiernan and Alexander M'Donald, in trust to pay the debts of the new firm, to which in justice they conceived it ought to be applied. That James Fulton brought into the concern about $800, being a debt owing from Davis, and that he had about $24,000 in merchandise; that the new house traded principally on credit of their own, and not on the stock of the old firm which had been transferred. That the new house have paid upwards of $50,000 on account of the debts of the old; that they have applied what was collected of the debts of the old firm to the payment of its debts; and more, that they are now using their exertions to collect the balance of the old debts formerly due them, but now owing to their trustees in consequence of the assignment.
This instrument of writing provides for a division *Page 124 
among such of the creditors as should sign it within eight months, in proportion to their respective debts, in case of deficiency.
BLAND moved to read several affidavits, which he offered, to disprove some of the statements made in the answer, and to induce the Court to continue the injunction. In support of this motion, he cited 3 P. W. 55; 2 Eq. Ca. 14.
We will first consider whether the Court has jurisdiction of the subject. Let the argument proceed on that ground first, and, secondly, whether there is such a case made by the pleadings as will authorize the Court to afford relief.