## DAVID GREWAR *vs.* WILLIAM HENDERSON.

### October Term, 1872.

CHANCERY JURISDICTON IN PERSONAM.—The original jurisdiction of the Court of Chancery, depending upon the power to compel discovery and to act upon the conscience of the defendant, was *in personam*. The departures from this rule depend upon positive statute, and have always been strictly construed.

SAME—PUBLICATION IN LIEU OF SERVICE.—Under our statutes before the Code, publication, in lieu of personal service of process, could not be made until the defendant, against whom process issued, had the opportunity to enter his appearance, as the same ought to have been entered in case such person had been duly served; and the statutes are all substantially embodied in the Code.

CASE IN JUDGMENT.—Where, therefore, the bill alleged that the defendant was a citizen of Davidson county, and subpœna to answer issued on the 22d of April, 1872, returnable to the first Monday of the ensuing October, and was returned by the sheriff on the 24th of June, 1872, "not to be found in my county, I am informed he is not in the state," and publication was at once made requiring the defendant to appear on the same first Monday of October; *Held*, that the publication was premature, and a *pro confesso* order taken at the October term was set aside, and the cause remanded to the Rules.

*Baxter & Allison*, for complainant.

No appearance for defendant.

THE CHANCELLOR:—The Bill in this case was filed for a partnership account against the defendant as a citizen of Davidson county, Tenn. The subpœna to answer issued on the 22d of April, 1872, and was returnable on its face to the 1st Monday of October, 1872. The sheriff's return is in these words: "Came to hand 19th of June, 1872, William Henderson not to be found in my county. I am informed he is not in the state, June 24, 1872," and is properly signed. On the 30th of July, 1872, the clerk and master

made an order of publication, reciting that " it appearing from affidavit filed in this cause that the defendant, William Henderson, is not to be found," and requiring the defendant to enter his appearance within the first three days of the next term to be held on the first Monday in October, 1872, etc.   Publication seems to have been made under this order according to law, and the defendant failing to enter his appearance as required, the bill was taken for confessed, and set for hearing.   The complainant, without having taken any proof, asks for a decree final upon the basis of the allegations of his bill.

As the practice of this court has become very loose in regard to bringing in parties defendant by publication, I have thought it not improper, although not absolutely necessary to the decision of this case, to make suggestions on the subject for the guidance of the master and for the consideration of counsel.

The jurisdiction of this court, depending as it did upon the power to compel discovery and to act upon the conscience of the defendants, was originally *in personam.*  " This was, as has been said by an eminent judge of this state (Judge Overton in *Grace* v. *Hunt,* Cooke, 343), not only a principle in equity but of common law.   It was founded on the dictates of natural justice, that a person should have an opportunity of being heard in his defense, before any decree or judgment should pass against him."   The departures from the rule depend upon positive statute, and have always been strictly construed.   Such proceedings, as our supreme court have often said, " are in derogation of the common law ; are *ex parte* in their character, and liable to great abuse ; and, therefore, the courts have not felt warranted, by any latitude of construction or implication, to go beyond the plain words of the statute."   *Welch* v. *Robinson,* 10 Hum. 265.   The Supreme Court of the United States have had the same subject before them, and used similar language. " No principle," they have said, " is more vital to the administration of justice, than that no man shall be condemned

in his person or property without notice and an opportunity to make his defense. And every departure from this fundamental rule, by a proceeding *in rem*, in which a publication of notice is substituted for a service on the party, should be subjected to a strict legal scrutiny. Jurisdiction is not to be assumed and exercised in such cases upon the general ground that the subject-matter of the suit is within the power of the court. The enquiry should be, have the requisites of the statute been complied with, so as to subject the property in controversy to the judgment of the court, and is such judgment limited to the property named in the bill. If this cannot be answered in the affirmative, the proceedings of the court beyond their jurisdiction are void." *Boswell's Lessee* v. *Otis*, 9 How. 336. See also 17 How. 237; 4 Pet. 466; 1 Pet. 328, 340; 2 Pet. 201; 11 How. 437; 5 Cranch, 173. *A fortiori*, where the proceeding, as in the case before us, is not *in rem*.

The Code of Tennessee was intended to embody the law of the state previously in existence, not to make violent innovations. The change of phraseology in the omission of the useless verbiage of the old law, and the dislocation of parts of the same statute, rendered necessary by the form of compilation, have, in this instance as in some others, led to a change in practice and construction; but the change has not been for the better, nor is it justified by the wording of the Code when carefully examined.

In actions at law, the cases in which personal service was dispensed with were regulated by the act of 1794, 1, 17. By this section it was provided that, when the sheriff returned the leading process that the defendant is not to be found within his county, the plaintiff might sue out an *alias* or *pluries* until he be arrested, returnable in the same manner as the original process. Instead of suing out an *alias* or *pluries* summons, the plaintiff might, at his election, sue out an attachment, commonly called a judicial attachment because awarded by the court on motion, against the estate of the defendant, returnable in the same manner as the origi-

nal process. This provision of the old law is brought into the Code, § 3466.

Proceedings in equity in like cases were regulated by the acts of 1787, 22, 1; 1801, 6, 14; and 1833, 15.

By the first of these acts it is provided: " If, in any suit which shall be commenced in any court of equity, any defendant or defendants, against whom any subpœna or other process shall issue, shall not cause his, her, or their appearance to be entered on such process within such time and in such manner as, according to the rules of the court, the same ought to have been entered in case such person had been duly served, and an affidavit shall be made to the satisfaction of the court, that the defendant resides beyond the limits of the state, and that upon enquiry at his usual place of abode he could not be found so as to be served with such process, and that there is just ground to believe that such defendant is gone without the limits of the state, or otherwise absconded to avoid being served with the process of the court, then and in such case," the court shall make an order directing the defendant to appear at a certain day therein named, which order shall be published in the mode prescribed, and on proof of publication the court may order the bill to be taken for confessed, and make decree thereon as shall be thought just. The substance of this is condensed into section 4352, subs. 2 of the Code.

But so careful were our ancestors to guard the interests of defendants who were not served with process, or to prevent an abuse of the proceeding authorized, the plaintiff was, by the first proviso of said section, required before taking his decree to give security, in such sum as the court shall think proper, to abide such orders touching the restitution of such estate or effects as the court shall think proper to make concerning the same, upon the defendant appearing and petitioning to have the same reheard. Then followed several other provisos further guarding the rights of the defendants, the substance of which provisos is embodied in the Code from § 4379 to § 4383 inclusive.

The act of 1801, 6, 14 is:  " In all cases, except such as
relate to debts contracted in other states, where the sheriff
shall return *non est inventus* upon any leading process, the
court shall proceed to make publication as heretofore, and
upon proof thereof as aforesaid, the court shall proceed to
make a final decree under regulations herein provided."
This provision of law is condensed into subsection 3 of sec-
tion 4352 of the Code.

The act of 1833, 15, extended the provisions of 1787, 22,
1, to cases where upon process issued, and failure of de-
fendant to enter his appearance as if duly served, affidavit
is made to the satisfaction of the court, " that the place of
residence (of the defendant) is unknown to the plaintiff,
and that such plaintiff, on diligent enquiry, cannot discover
the place of residence of such defendant." This provision
of law constitutes subsection 5 of section 4352 of the Code.

These acts are, it will be noticed, all substantially em-
bodied in the Code, section 4352, subs. 2, 3 and 5, and sec-
tions 4353, 4354, and 4379 to 4383 inclusive. Subsections
1, 4 and 6 of section 4352 embody statutory extensions of
the same general law, and are, of course, subject to the provi-
sions of sections 4379 to 4383 whenever applicable, unless it
be subsection 6 which may fall within the provision of
section 4378.

It will thus be seen that the old statute law is substan-
tially carried into the Code. That old law unquestionably
provided that publication should not be made until the de-
fendant, against whom leading process issued, had had the
opportunity to enter his appearance " as the same ought to
have been entered in case such person had been duly served."
And this, because such publication is in lieu of *alias* or *plu-
ries* summons, or judicial attachment. There was no ground
for making publication until the next term after process had
issued five days before such term, and, if process issued
within the five days, until the term after the next term.

Upon this point, the Code is by no means so clear. This
grows out of the fact that so many separate statutory provi-

sions are brought into § 4352, and because §§ 4353 and 4354 provide for two classes of cases without discriminating between them. The first class of cases is where the fact upon which the publication is grounded is authorized by law to be shown on the face of the bill, or by affidavit attached thereto. The second class is where the ground of publication is the return of the officer. The complainant was not required to state the residence of the defendants in the bill until required by Rule. X of the Chancery Rules adopted in 1825. *Davis* v. *Fulton*, 1 Tenn. 121, 137 ; *University* v. *Cambreling*, 6 Yer. 79, 84. Previous to that rule, the non-residency could only be ascertained or averred after the return of process.

After that Rule, it was a useless form to issue the process. Naturally, therefore, the necessity of postponing the order of publication for non-residents ceased to exist, and such publication was authorized to be made by the clerk upon affidavit of the fact. But the law has not been changed in cases where the summons or leading process is still required. It is only by considering § 4354 as extending to this class, when in reality it only applies to the cases where the ground of publication may be shown by affidavit, that a loose practice has grown up.

But there is a clear distinction in sound reason between the two classes of cases. The one class requires the fact to appear on the face of the bill, or by affidavit attached. If the fact thus alleged be untrue, the proceedings are fraudulent and void, and the party complainant is the party to suffer for the falsehood, or error. In the other class, the fact upon which publication is grounded must appear by the officer's return. If there be a false return, the proceedings are valid, and the remedy against the officer alone, unless there be collusion between him and the complainant. The defendant is entitled to additional guards for his protection. The return of *non est inventus* implies that the residence of the defendant is in the county, and that the sheriff has been at his place of abode ; and if these are not the facts, the re-

turn is a false one, and subjects the sheriff to an action for a false return. He should return the truth of the case, either that the defendant is not an inhabitant of the county, or that he resides in another specifying it. *Slatton* v. *Jonson*, 4 Hay. 197. The return of 'not to be found' implies that the defendant by his own act has put it beyond the power of the ministerial officers of the court to serve him personally with process. *Welch* v. *Robinson*; 10 Hum. 264; *James* v. *Hall*, 1 Swan, 297.

In the case before us the bill expressly alleges that the defendant is a citizen of Davidson county. The officer's return does not negative this fact, nor does it show that the defendant is evading the process, or may not return in time to be served, or to enter his appearance "within such time, and in such manner" as he should have entered it had he been served with process. On the contrary, the words " is not in the state" only imply a temporary absence. It was the duty of the sheriff to have retained the process until the return day, unless he could truthfully make a return showing expressly or by necessary implication of law, that the defendant was evading the process, or a non-resident of the state. And even then, the defendant would be entitled to his appearance within the first three days of the next term, and until he fails to do so, he should not be put to the expense of publication. "The practice of taking bills for confessed is of such serious consequence to the rights of the parties, that it is both proper and necessary that it should be strictly confined within the limits prescribed by the statutes and rules of court." *Lanum* v. *Steel*, 10 Hum. 280.

The *pro confesso* cannot be sustained in this case for another reason. The order of publication is based upon an affidavit filed that the defendant is not to be found. The statute requires that it should be based upon the officer's return. The defect, although, as suggested, it probably originated in a clerical error, is fatal.

The *pro confesso* must be set aside, and the cause remanded to the Rules. The complainant will pay the costs

of the cause which have accrued since the return of the original subpœna.