IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF NEW JERSEY

AT FEBRUARY TERM, 1872.

---

### HENRY G. RUSSELL v. THOMAS AND ALANSON WORK.

1. The court for the trial of small causes is not an inferior court, in the sense that its judgments can be called in question in a collateral proceeding.

2. In a suit by a defendant in an attachment suit, against the garnishee, the proceedings in attachment cannot be treated as a nullity, when set up by the garnishee as a defence, on the ground of a substantial defect in the affidavit on which the attachments issued.

3. The affidavit, though defective, gives the justice jurisdiction, and his judgment and proceedings, as well against the garnishee as against the defendant, can be vacated only in a direct proceeding.

---

Writ of error to the Circuit Court of the county of Cumberland.

The suit was in case for money had and received. The defence was, that the moneys sued for had been attached and paid over under proceedings in attachment before a justice, at the suit of one George W. Pryor, against the plaintiff,

316

Russell. The following is a copy of the affidavit in the attachment proceedings :

"State of New Jersey, Cumberland county, ss.—Marcus Fry, attorney for George W. Pryor, of Ankora, State of New Jersey, maketh oath, that Harvey G. Russell is not, to this deponent's knowledge or belief, resident at this time in the State of New Jersey, and that he owes said deponent the sum of eighty-two dollars and fifty cents, as nearly as this deponent can ascertain.

"GEORGE W. PRYOR,
"*By his attorney in fact, Marcus Fry.*

"Taken before me this ninth day of October, eighteen hundred and sixty-nine.

"ROBERT C. SYKES, *J. P.*"

On the 9th day of October, 1869, the justice issued a *scire facias* against the defendants in this suit, returnable the 13th of November then next. On the 9th day of October one of the defendants appeared before the justice and confessed that the sum of $100 was in the hands of himself and partner, due to the defendant in attachment, and thereupon the justice entered judgment against the garnishee, and issued execution, and the money was paid by the garnishee.

For plaintiff, *William E. Potter.*

For defendants, ——— ———.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This was a suit for money received by the defendants for the use of the plaintiff; and the defence was, that the money in question, having been attached in the hands of the defendants, had been paid over by them in the legal course of such proceedings. It was not denied that the moneys had been thus appropriated, but this defence was met on the trial with the contention that the at-

tachment procedure was void, and could afford no protection to the defendants.

The suit thus drawn in question had been brought before a justice of the peace, and the first defect which was relied upon was that the affidavit, upon which the attachment rested, was informal and insufficient in substance. An inspection of this paper fully justifies the character thus given to it. The oath is taken by an agent or attorney, and it is framed upon the idea that it is the act of the principal; and it consequently alleges that the money is due the deponent. It must consequently be admitted that this first step in this attachment suit was erroneous and imperfect—so much so as to vitiate the judgment and the collateral proceedings founded thereon. On a *certiorari*, the entire action taken by the justice would have been set aside. But this does not reach the point for present decision, which is, whether, in a collateral proceeding, we are at liberty to treat such action as absolutely void.

The counsel for the plaintiff, arguing in favor of this proposition, seemed to consider the status of the court for the trial of small causes as identical with that of an inferior court at common law. But I think, in this estimate, he is mistaken. The justices' court, in our system, obviously stands on a higher grade than this. It is made by the statute a court of record. Its jurisdiction is limited to certain classes of cases, but so is the jurisdiction of most of the other state courts. It has been repeatedly adjudged by this court that its records impart absolute verity, and that they cannot be drawn in question, except in a direct proceeding for that purpose. Its process and modes of practice are founded on the models of the higher courts. That these are the characteristics of the court for the trial of small causes, is manifested everywhere in our reports.

In *Vandyke* v. *Bastedo*, 3 *Green* 231, it was held that neither "the truth" nor justice of a judgment in this court could be questioned, except by an appellate court. In *Miller* v. *Miller*, 2 *South. R.* 508, that a transcript of a justice was admissible in evidence without proof of his handwriting; in *Westcott* v. *Garrison*, 1 *Halst.* 132, that all intendments are

to be made in favor of his record; and in *Idle* v. *Idle*, 6 *Halst*. 92, that a rule will not be granted to compel a justice to certify to a fact concerning which his transcript is clear and unambiguous. A tribunal clothed with capacities and privileges such as these, is not to be likened to what were known as inferior courts at common law—some of which were not even courts of record. The judgments of such courts were not deemed conclusive. This is the doctrine of *Herbert* v. *Cook*, 3 *Douglas* 101; and *Thompson* v. *Blackhurst*, 1 *Nev. & Man.* 266, stands upon the same ground, deciding that the judgment of a county court is not conclusive, but that the existence of the facts necessary to the regularity of such judgment is a question for a jury. And in *Moravia's case, Rep. Tem. Hardw.*, per Annaly, 135, we find it declared that the judges of these inferior courts may be punished for misbehavior, either by information or attachment. In view of these features, it is not easy to see by what line of reasoning such courts are to be made to resemble our statutory court in question. The dissimilarities are very marked, and, indeed, are quite as striking as were the distinctions between what, in the English system, are called the superior and inferior courts. The confusion in discriminating between these latter courts and the court for the trial of small causes, has, I think, arisen mainly from not distinguishing a court of limited jurisdiction from the inferior court of the common law. Erroneous ideas upon this subject prevailed to some extent in this state, with respect even to some of our more important courts, until the decision in the case of *Den* v. *Hammel*, 3 *Harr*. 73, in which it was declared that the Orphans' Court, although possessed only of a limited statutory jurisdiction, was not a tribunal whose decrees could be drawn in question collaterally—a doctrine that was subsequently re-affirmed in the cases of *Den* v. *O'Hanlon*, 1 *Zab*. 582, and *Hess* v. *Cole*, 3 *Zab*. 121. In this last case, Chief Justice Green, in denoting the difference between an inferior court, in the technical sense of the term, and a court of limited jurisdiction, shows very clearly that the

justice's court is not to be ranked in the former category. His views occur in the passage following :

"The Orphans' Court, as established in this state, is not a tribunal of general jurisdiction. The jurisdiction does not extend to all persons, nor to every subject matter. In this sense, its jurisdiction is limited ; and in the same sense the courts for the trial of small causes, the Court of Common Pleas, and even the Circuit Court of the United States, are courts of limited jurisdiction. But they are not, in the technical sense of the term, inferior courts or courts of special jurisdiction, whose proceedings are subject to the narrowest rule of construction, and whose judgments will be deemed invalid for every irregularity apparent in thier proceedings."

Upon a critical examination, this same distinction will be found clearly marked in the line of cases on this subject. *Kempe's Lessee* v. *Kennedy*, 5 *Cranch* 173 ; *McCormick* v. *Sullivant*, 10 *Wheat.* 192; *Grignon's Lessee* v. *Astor*, 2 *How.*, *U. S.*, 319. This same doctrine appears to have been acted on in the case of *Van Doren* v. *Horton*, 1 *Dutcher* 205, in which, the transcript showing that the justice had issued a summons in a plea of trespass on the case for $100, it was held that, by intendment, this must be considered legal process, and for a cause of action within the jurisdiction of the court, although in the opinion read in the case, there are propositions and assumptions which cannot be assented to, and which, taken as guides, would have, apparently, led to a result the opposite to that reached by the court.

Regarding, then, the justice's court as a court of record, possessing a limited but general jurisdiction over specified classes of cases, and whose jurisdiction need not be shown on the face of its proceedings, I think it obviously follows that the attachment suit in question cannot be treated, in a collateral proceeding, as a nullity. The filing of an affidavit gave that court cognizance of the case, and it was part of the judicial function of the justice to pronounce on the legal sufficiency of this initial act. The proposition that this officer, in the exercise of this power, can become a trespasser, if he err as to

the legal effec of the oath on which he is called to give his opinion, is utterly 'nadmissible. In a matter of jurisdiction depending on the fact of the presence of a sufficient affidavit, all the courts of the state stand on the same footing. If the affidavit in question did not give the justice jurisdiction, and its defects converted his proceedings into a trespass, neither would such affidavit have given this court jurisdiction, and its defects would have made the proceedings of this court a trespass. A principle producing such a result cannot be sound. The law does not subject its judicial officers to a responsibility so onerous and unreasonable. The circuit judge was right in holding that these proceedings of the justice, when brought in question collaterally, could not be regarded as of no validity.

It is proper to remark, that most of the authorities cited by the counsel of the plaintiff in error are not deemed applicable, and are not, therefore, reviewed. These decisions do not relate to the acts of courts, but to the acts of officers clothed with particular powers in cases of attachment. In many of the states, certain designated officers are authorized to issue process against absent and absconding debtors; such authority is special in its character, and is obviously subject to rules of construction entirely different from those which appertain to the power exercised by judicial tribunals.

Another objection to these attachment proceedings was relied on. The record shows that, before the return day of the *scire facias*, the garnishee, who is a defendant in this action, appeared before the justice and confessed the debt due from himself and partner to the plaintiff. It is insisted that the judgment entered on this confession is a nullity. But this exception arises out of the hypothesis, already refuted, that the acts of the court for the trial of small causes can, in an indirect way, be drawn in controversy. The justice had jurisdiction over the garnishee, and, consequently, the judgment which was rendered against him is not to be challenged in the present suit. Nor do I perceive how it would help the plaintiff in error, if we should treat this judgment as a nullity, for

the levy under the attachment would still be good, and a levy would be sufficient to protect the garnishee against this present claim.

The judgment rendered in the Circuit Court should be affirmed.