## EDELSTEIN v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.    November 30, 1906.)

No. 2,406.

1. BANKRUPTCY—PETITION—REQUISITES.

Where a petition of creditors to have a debtor declared a bankrupt failed to aver that the debtor was not a wage earner or a person engaged chiefly in farming or in tilling the soil, as required by Bankr. Act July 1, 1898, c. 541, 30 Stat. 547, [U. S. Comp. St. 1901, p. 3423], as amended (section 4), the petition was demurrable and insufficient to sustain an adjudication if timely objection was made thereto.

2. JUDGMENT—BANKRUPTCY—ADJUDICATION—COLLATERAL ATTACK.

Where, after a debtor had been adjudged a bankrupt, he recognized the validity of the adjudication, and applied for a discharge from his debts, and there was no appeal taken, the adjudication was not subject to collateral attack because of a defect in the petition, in a proceeding against the bankrupt for taking a false oath.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, §§ 913, 914; vol. 6, Bankruptcy, §§ 142, 143.]

3. SAME—VERITY.

Where judgments are rendered in bankruptcy proceedings on questions arising therein, they possess all the incidents and qualities of finality and conclusiveness appertaining to judgments of courts of general jurisdiction, and, unless reversed on appeal or writ of error, import absolute verity.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, §§ 907, 908; vol. 6, Bankruptcy, §§ 142, 143.]

4. BANKRUPTCY—DEFENSES—"FALSE OATH"—STATUTES—CONSTRUCTION.

Bankr. Act July 1, 1898, c. 541, § 29, 30 Stat. 554 [U. S. Comp. St. 1901, p. 3433], provides that a person shall be punished by imprisonment on conviction of having knowingly and fraudulently made a false oath or account in or in relation to any proceeding in bankruptcy, and Act July 1, 1898, c. 541, § 2, subd. 12, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3421], imposes the duty to discharge or refuse to discharge bankrupts on courts of bankruptcy as one of the "bankruptcy proceedings." Act July 1, 1898, c. 541, § 30, 30 Stat. 554 [U. S. Comp. St. 1901, p. 3434], authorizes the Supreme Court of the United States to prescribe all necessary rules, forms, and orders for carrying the act into effect, pursuant to which general order No. 12 was adopted, declaring that applications for a discharge shall be heard and decided by the judge, with authority to refer the application or any specified issue to a referee to ascertain and report the facts. Held, that the term "false oath" was not limited to the examination of the bankrupt, authorized by Act July 1, 1898, c. 541. § 7, subd. 9, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3425], nor to false swearing in connection with the bankrupt's schedules, but related to any proceeding in bankruptcy, including the examination of the bankrupt before a referee on an investigation of specifications filed against his discharge.

5. WITNESSES—BANKRUPTCY PROCEEDINGS—IMMUNITY—EXTENT OF.

Bankr. Act July 1, 1898, c. 541, § 7, subd. 9, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3425], provides for the examination of a bankrupt at the instance of his creditors, and declares that no testimony given by him shall be offered in evidence against him in any criminal proceeding. Held, that the examination contemplated by such section relates to past transactions; that the words "in any criminal proceeding" are limited to proceedings arising out of the conduct of the bankrupt's business, the disposition of his property, etc.; that the immunity provided for is limited to protecting the bankrupt from the use of his evidence in such criminal proceed-

ings as arise out of the conduct of his business or the disposition of his property, etc., and does not protect him from prosecution for false swearing in giving his evidence.

**6. SAME.**

Section 7, subd. 9, supra, does not grant immunity to the bankrupt from prosecution for testifying falsely in a proceeding to investigate the truth of specifications filed against his discharge.

Philips, District Judge, dissenting in part.

In Error to the District Court of the United States for the District of Minnesota.

On January 12, 1904, the defendant, Edelstein, and his partner, Jacob Harris, were adjudicated bankrupts by the District Court of the District of Minnesota on the petition of certain of their creditors. Later the bankrupts filed their application for discharge, to which several of their creditors objected, and specified grounds therefor as follows: "That within four months subsequent to the first day of the four months immediately preceding the filing of the petition in bankruptcy herein, they did knowingly and fraudulently transfer, remove, and conceal, and permit to be removed and concealed, certain of their property with the intent to hinder, delay, and defraud their creditors, as follows: That on said 30th day of September, 1903, said bankrupts shipped and consigned to said Morris Edelstein from St. Paul to Eveleth, Minnesota, a certain shipment of woolens, trimmings, and other merchandise, with intent to remove and conceal the same, for the purpose of hindering, delaying and defrauding their creditors, and they did thereafter conceal the same from their creditors for that purpose." Thereafter, on April 4, 1904, pursuant to the provisions of general order in bankruptcy No. 12, the specifications against their discharge were by an order of court referred to a referee in bankruptcy, to take the evidence of the parties in interest in respect of the matter set forth in them, and to report the evidence taken, with his findings thereon, for the information of the court. During this investigation Edelstein was sworn as a witness by the referee, and examined relative to the matter before him. Among other questions, he was asked the following: "Did any of the goods which are alleged to have been shipped September 30, 1903, by your firm to you from St. Paul to Eveleth ever come into your possession?" To which he answered, "No, sir." Later defendant Edelstein was indicted for the crime of having made a false oath "in relation to a proceeding in bankruptcy," as denounced by section 29, subd. 2, of the bankruptcy act. Act July 1, 1898, c. 541, 30 Stat. 554 [U. S. Comp. St. 1901, p. 3434]. He was found guilty as charged, and sentenced to a term of one year and three months in the Minnesota penitentiary. A writ of error prosecuted by him brings before us for review several assignments of error, which will be specified as the opinion proceeds.

Daniel W. Lawler, for plaintiff in error.

Chas. C. Houpt, for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and PHILIPS, District Judge.

ADAMS, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Counsel for defendant urges several reasons for a reversal of the judgment: (1) Because the District Court, as a court of bankruptcy, had no jurisdiction of the proceedings in which defendant was charged to have made the false oath. (2) Because the testimony given by defendant before the referee could not be a "false oath," within the meaning of the act. (3) Because the testimony given by him afforded no ground for the prosecution, by reason of the immunity provided

for in section 7, subd. 9, of the act. Act July 1, 1898, c. 541, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3425].

The first contention is presented in a double aspect: First, that it does not appear from the petition upon which defendant was adjudicated a bankrupt, which was offered in evidence by the government and received against the objection and exception of defendant, that he was not "a wage earner or a person engaged chiefly in farming or the tillage of the soil"; and, second, that the indictment fails to aver that defendant was not within the class just mentioned, and for that reason failed to charge a criminal offense.

The petition of the creditors was in the approved form, except that it failed to aver that the bankrupts were not wage earners or persons engaged chiefly in farming or the tillage of the soil, as required by section 4 of the bankruptcy act as amended. For want of such averment, the petition was demurrable, and if timely objection had been made to it no adjudication could have been had upon it. C. C. Taft Co. v. Century Savings Bank, 72 C. C. A. 671, 141 Fed. 369; In re Plymouth Cordage Co., 68 C. C. A. 434, 135 Fed. 1000; Beach v. Macon Grocery Co., 57 C. C. A. 150, 120 Fed. 736; In re Taylor, 42 C. C. A. 1, 102 Fed. 728. But after a hearing was had, an adjudication of bankruptcy made, and the bankrupt, recognizing its validity, had applied for a discharge from his debts, can it be said that such an adjudication, when no person interested has questioned its validity by appeal or otherwise, is void upon collateral attack? We think not. It is true the District Court as a court of bankruptcy is one of limited jurisdiction—that is, limited in respect of the subjects over which it may exercise jurisdiction—but it is unlimited in respect of its power over proceedings in bankruptcy, specifically made subject to its jurisdiction by section 2 of the act. When judgments are rendered by that court upon questions arising in such proceedings, they possess all the incidents and qualities of finality and conclusiveness appertaining to judgments of courts of general jurisdiction. Its judgments, unless reversed on appeal or writ of error, import absolute verity.

Chief Justice Marshall, early, in the case of Kempe's Lessee v. Kennedy, 5 Cranch, 173, 185, 3 L. Ed. 70, speaking for the Supreme Court of the United States, said:

"The courts of the United States are all of limited jurisdiction, and their proceedings are erroneous if the jurisdiction be not shown upon them. Judgments rendered in such cases may certainly be reversed, but this court is not prepared to say that they are absolute nullities, which may be be totally disregarded."

In McCormick v. Sullivant, 10 Wheat. 199, 6 L. Ed. 300, the Supreme Court, speaking by Mr. Justice Washington, in answer to the argument that the proceedings were void because jurisdiction of the court was not shown, said:

"[The argument] proceeds upon an incorrect view of the character and jurisdiction of the inferior court of the United States. They are all of limited jurisdiction; but they are not on that account inferior courts, in the technical sense of those words, whose judgments, taken alone, are to be disregarded. If the jurisdiction be not alleged in the proceedings, their judgments and decrees are erroneous, and may, upon a writ of error or appeal, be reversed for that cause. But they are not absolute nullities."

In Grignon's Lessee v. Astor, 2 How. 318, 341, 11 L. Ed. 283, the Supreme Court, speaking by Mr. Justice Baldwin, said:

"These principles are settled as to all courts of record which have an original general jurisdiction over any particular subjects; they are not courts of special or limited jurisdiction; they are not inferior courts, in the technical sense of the term, because an appeal lies from their decision. * * * They have power to render final judgments and decrees which bind the persons and things before them conclusively, in criminal as well as civil causes, unless revised on error or by appeal."

In Dowell v. Applegate, 152 U. S. 327, 340, 14 Sup. Ct. 611, 616, 38 L. Ed. 463, the Supreme Court, speaking by Mr. Justice Harlan, after reviewing the authorities, observed as follows:

"These cases established the doctrine that, although the presumption in every stage of a cause in a Circuit Court of the United States is that the court is without jurisdiction, unless the contrary affirmatively appears from the record (Bors v. Preston. 111 U. S. 252, 255, 4 Sup. Ct. 407, 28 L. Ed. 419, and the authorities there cited), yet if such jurisdiction does not so appear, the judgment or final decree cannot, for that reason, be collaterally attacked, or treated as a nullity."

See, to the same effect, Freeman on Judgments, vol. 1, § 124; In re Columbia Real Estate Co. (D. C.) 101 Fed. 965, 970.

In view of the principles so announced, it must be held that it was the duty of the court of bankruptcy primarily to find the facts, and determine therefrom, as a matter of law, whether it had jurisdiction over the proceeding before it. It performed its duty, reached the conclusion that it had, and pronounced judgment accordingly. Neither the bankrupts nor any other interested party saw fit to challenge the judgment by appeal or otherwise. It therefore became final and conclusive, and is not subject to collateral attack, as attempted in this case.

It follows that neither the demurrer to the indictment nor the objection to the introduction of the creditors' petition were well taken, and that the trial court did not err in overruling them.

Do the words "false oath," as employed in section 29 of the act, comprehend false swearing by the bankrupt in a proceeding before the court to investigate the truth of specifications filed against his discharge? The section, so far as it is necessary for our present inquiry, reads as follows:

"A person shall be punished by imprisonment for a period not to exceed two years upon the conviction of the offense of having knowingly and fraudulently * * * (2) made a false oath or account in or in relation to any proceeding in bankruptcy."

Section 2, subd. 12, of the act devolves the duty "to discharge or refuse to discharge bankrupts" upon courts of bankruptcy as one of the "bankruptcy proceedings" of which original jurisdiction was conferred upon them. Section 30 of the act authorizes the Supreme Court of the United States to prescribe "all necessary rules, forms and orders as to procedure and for carrying this act into force and effect." Pursuant to the provisions of that section, general order No. 12 was adopted by the Supreme Court, which is as follows:

"Applications for a discharge * * * shall be heard and decided by the judge, but he may refer such an application or any specified issue arising thereon to the referee to ascertain and report the facts."

··Upon the filing of· the petition for discharge and ·the· specifications of objection thereto, the court of bankruptcy, acting by authority of the general order just referred to, ordered:

"That said matter [the specifications of objection] be, and the same is hereby, referred to Michael Doran, Jr., one of the referees in bankruptcy. of said court, to take the evidence of the parties in interest with respect to the material matters set forth in said specifications, which are attached to this order, and report such evidence to the court, together with written findings thereon and recommendations as to whether discharge should be ·granted or refused said bankrupts."

By that order the referee was required to take the evidence of the parties in interest. That necessarily included the bankrupt, Edelstein, for no one had a greater interest in the pending inquiry than he.

From the foregoing, it appears that the examination of the bankrupt, Edelstein, was authorized by law, and appropriate orders of court made pursuant thereto. Obedient to the order of court, the bankrupt appeared· before the referee, was sworn by him, as authorized by section 20, to tell the truth, and gave testimony on his own behalf on the pending issue. In giving that testimony it is charged that he made a false oath, or swore falsely, within the meaning of section 29, supra.

It is contended by defendant's counsel that section 7, subd. 9, which requires a bankrupt when present at the first meeting of his creditors, and at such other times as the court shall order, "to submit to an examination," etc., does not necessarily contemplate that the examination should be under oath. We think this is a misconception of the provisions of the act. The word "examination," used in connection with legal proceedings, is commonly understood to mean an examination under oath or "affirmation," which by the provisions of the bankruptcy act (section 1, subd. 17) is included in the word "oath." In view of this common understanding, it is not conceivable that Congress intended a departure from it without clear and unambiguous words to that effect. There are no investigations in which prospect of the pains and penalties of perjury can be more salutary than one into the affairs of an insolvent debtor, and we cannot strain or distort the ordinary meaning of language to indulge the presumption that Congress intended to do away with that safeguard. This interpretation of the legislative ·intent is reinforced by the context, in which the provision for an "examination" is found. With direct reference to that provision it is said: "But no testimony given by him shall be offered in evidence," etc. The word "testimony" or "to testify" implies the usual preliminary qualification, of taking an oath to speak the truth. Such an implication is so reasonable and well understood among lawyers and legislators that we would do violence to common intelligence to impute to Congress any other intention in the legislation in question.

It is further contended by counsel for defendant that the words "false oath" as so employed relate to the oath required by section 7 to be made by the bankrupt to his schedules of assets and liabilities,· and do not relate to false swearing by the bankrupt in an examination to which he may be subjected. This contention does not commend itself to our approval. The offense is. denounced broadly. It consists of making "a false oath or account in or in relation to any pro-

ceeding in bankruptcy." This, according to the plain and usual meaning of the language employed, embraces not only the making of false accounts, but the making of false oaths in or in relation to a proceeding in bankruptcy. Adverting again to section 2 of the act, it is observed that the granting or refusing to discharge a bankrupt is one of the recognized bankruptcy proceedings of which original jurisdiction is conferred upon courts of bankruptcy. The two sections, considered together, do not conduce to the result claimed by defendant's counsel. A most helpful rule governing the interpretation of legislative enactments is to examine all its provisions, and construe each in the light of all the others, to the end that they may be given one harmonious operation. In this way we most surely arrive at the legislative intent. If the false oath in question does not embrace false swearing in testimony given by bankrupts in the proceeding relating to their discharge, which is one of the primary purposes of the act, it is difficult to understand what proceedings in bankruptcy could be referred to in section 29, in which false swearing is denounced as a crime. We think the obvious meaning of the provision is as stated by Loveland in his second edition of the Law and Proceedings in Bankruptcy (section 231) as follows:

"An offense under this provision may arise in connection with any oath or affirmation made in any part of the proceedings; as an oath to a schedule filed by a bankrupt, an oath to prove a debt by a creditor, an oath made to an account by a trustee, or a deposition or testimony given by any person in the course of the proceedings."

This construction is a broad and wholesome one, fairly within the intendment of the language employed, and conducing to the effectual enforcement of all the provisions of the act; while any other, and especially that claimed by defendant's counsel, leaves the act unenforceable, except by the imperfect obligation of moral suasion, as against attempts of the bankrupt, which are too often made to thwart its main purpose of distributing all his assets among his creditors. This court in Bauman v. Feist, 46 C. C. A. 157, 107 Fed. 83, speaking by Judge Caldwell in a case involving the question whether a false oath would bar a discharge of the bankrupt, made use of the following language:

"The 29th section declares that the bankrupt shall be punished by imprisonment upon the conviction of the offense of having knowingly or fraudulently made a false oath or account in or in relation to any proceeding in bankruptcy. Plainly the false oath contemplated by this provision must be one material to the proceedings in bankruptcy. It must have some relation to the bankrupt's estate or to the bankrupt's act affecting his estate, and must have been made knowingly and fraudulently."

Our present view is in full accord with the view then entertained by this court, and, notwithstanding the fact we were then considering the section in question in relation to other provisions of the act, the interpretation placed upon it is equally appropriate in its relation to the provisions now under consideration.

Does the immunity provision found in section 7, subd. 9, prevent the use of defendant's testimony as the basis of an indictment in this case? The context in which this provision is found is as follows:

"Any person at the first meeting of his creditors and at such other times as the court shall order [the bankrupt shall] * * * submit to an examina-

tion concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind and whereabouts of his property, and in addition, all the matters which may affect the administration and settlement of his estate; but no testimony given by him shall be offered in evidence against him in any criminal proceeding."

This provision finds its inspiration in the fifth amendment to the national Constitution, which ordains that "no person shall be compelled in any criminal case to be a witness against himself." That constitutional inhibition was intended for the protection of personal rights, and a liberal construction should be placed upon it to accomplish the intended purpose. It has been held efficacious to prohibit coercion by statute of self-incriminating testimony, not only in a pending criminal case, but in investigations by grand juries and legislative committees. Statutory requirements for production of books, or making returns by individuals or officers of corporations, concerning their method of doing business, have been held invalid on a claim that they might tend to incriminate. The inhibition not only protects one from the disclosure of facts which would tend to prove his guilt, but also from disclosure of facts which might furnish a clue or a link in a chain of evidence by which a criminal offense might be made known. Boyd v. United States, 116 U.'S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110; Emery's Case, 107 Mass. 172, 9 Am. Rep. 22; State ex rel. Attorney General v. Simmons Hardware Co., 109 Mo. 118, 18 S. W. 1125, 15 L. R. A. 676.

In view of the foregoing authorities, the immunity found in section 7, subd. 9, not being an absolute one from future prosecution for the offense to which the testimony related, but a partial one from the use of the testimony given in such a prosecution, was not sufficient to supplant the privilege conferred by the Constitution in the event such privilege had been claimed by the bankrupt. Counselman v. Hitchcock, supra. The defendant, however, did not claim his constitutional privilege, but consented to answer the obviously self-incriminating question propounded to him on the terms of the partial immunity afforded by the bankruptcy act, namely, that his testimony should not be used against him in any criminal proceeding. He contends that this is a "criminal proceeding," and that he comes literally within the protection of the last-mentioned immunity clause. The government contends that the immunity has sole reference to the use of evidence in a prosecution for some offense to which his evidence related; that Congress offered as an inducement to a full, frank, and truthful disclosure by a bankrupt for the benefit of his creditors of all matters and things concerning his property and estate that his evidence should not be used against him in any prosecution for any such offense, however much it might implicate him.

Defendant's argument is that the language employed is comprehensive and unequivocal; "that no testimony given by him shall be offered against him in any criminal proceeding"; that it, in terms, prohibits the use of the negative answer given by the bankrupt to the question propounded to him, although knowingly and intentionally false, as a basis for the criminal charge involved in the indictment

now under consideration. To this we cannot give our assent. There is no rule requiring a literal construction to be placed even upon unambiguous words of a particular clause of a statute without consideration of its context. The meaning of specific words in one part of a statute is often controlled by other provisions of the same act, and frequently by provisions of other acts which are in pari materia.

Sutherland, in his work on Statutory Construction (section 219), says:

> "Not only may the meaning of words be restricted by the subject-matter of an act or to avoid repugnance with other parts, but for like reasons they may be expanded. * * * The statute itself furnishes the best means of its own exposition; and if the intent of the act can be clearly ascertained from a reading of its provisions, and all its parts may be brought into harmony therewith, that intent will prevail without resorting to other aids for construction. * * * The intention of an act will prevail over the literal sense of its terms."

These are different ways of expressing the well-recognized rule for construing a statute, namely, to ascertain from all its provisions, reasonably and naturally construed, what was the legislative intent. Applying this rule to the present case, we observe that the provision for the immunity is found in a section of the act providing for the examination of a bankrupt, concerning the conduct of his business, his dealings with his creditors and other persons, and the amount, kind, and whereabouts of his property. Section 7, subd. 9. The examination there contemplated relates to past transactions. Such examination might, from the nature of the case, in view of the penal provisions of the act, disclose evidence of former criminal conduct on the part of the bankrupt. Such evidence, however, was deemed so important and necessary for the proper administration of the estates of bankrupts that Congress, in effect, in the concluding portion of subdivision 9, makes a proposition to the bankrupt that, if he would forego his constitutional privilege to refuse to testify about his past transactions in so far as they might tend to incriminate him, no testimony which he might give should be used against him "in any criminal proceedings." What criminal proceeding do these words relate to? Obviously, to such as might arise out of the conduct of his business, the disposition of his property, and other past transactions, about which alone the statute authorized the examination in question to be made. The immunity was made conditional upon his giving testimony upon subjects out of which prosecutions against him might flow. A most natural and reasonable inference, therefore, is that Congress intended the immunity to relate to the use of his evidence in such criminal prosecutions only.

The Supreme Court in the Counselman Case, on page 586 of 142 U. S., page 206 of 12 Sup. Ct. (35 L. Ed. 1110), said:

> "In view of the constitutional provision [fifth amendment] a statutory enactment. to be valid, must afford absolute immunity against future prosecution for the offense to which the question relates."

It would seem that the statute in question was not intended to confer a broader immunity, so far as it was applicable, than the constitutional provision does in its scope of operation. To hold that the statute pro-

tects a bankrupt from the use of his evidence in a prosecution for perjury while actually testifying would defeat the obvious purposes of the act. It would, in effect, say to the bankrupt: You may forego the exercise of your constitutional privilege, and consent to testify concerning the conduct of your business, and in that way promote the efficient administration of your estate and benefit your creditors, and by so doing secure the immunity provided for; but if you give false testimony, calculated to embarrass the administration of your estate and to defeat the just rights of your creditors, and thereby commit a crime specially denounced against you, you shall enjoy the same immunity therefor. Moreover, it would, in effect, secure to the bankrupt the immunity in question for violating his part of the compact, namely, to testify—that is, to testify truthfully—by virtue of which he secured a right to the immunity. We are not willing to impute to Congress any such contradictory and absurd purpose. The words "any criminal proceeding" cannot sensibly or reasonably be construed so literally and generally as to include the criminal proceeding provided by law for false swearing in giving his testimony. They obviously have reference to such criminal proceedings as arise out of past transactions, about which the bankrupt is called to testify. "Constructions of statutes are to be made of the whole acts, according to the intent of the makers, and so sometimes are to be expounded against the letter to preserve the intent. * * * The reason and object of the statute are a clue to its true meaning." Taylor v. Taylor, 10 Minn. 107 (Gil. 81), and cases cited. "Theoretically, this argument" for construing statutes according to the literal meaning of the words employed "would seem to furnish a safe rule of interpretation. Practically, it is not always safe or sensible. A rigid adherence to it would not infrequently involve us in contradictions, absurdities, and palpable violations of the real intention of the Legislature." Ryegate v. Wardsboro, 30 Vt. 746, 749. "The intent and spirit of the act, and not the literal meaning, must govern where absurd consequences would otherwise follow." Reynolds v. Holland, 35 Ark. 56, 61. "If the intention" of the Legislature "is expressed in a manner devoid of contradiction and ambiguity, there is no reason for interpretation or construction * * *," and the literal meaning of the words of the statute must be enforced; but in cases involving such contradiction and ambiguity, courts are at liberty to decide in contravention of the exact language of the statute, if it is necessary to do so to enforce the legislative will. Sedgwick on the Construction of Stat. & Const. Law (2d Ed.) pp. 253–255.

In view of the mischief to be remedied and the object to be accomplished by the statute in question, we are unable, in the light of reason or authority, to sustain defendant's contention that it affords immunity to him for the crime with which he is charged in this case. The authorities to which his counsel invited attention (United States v. Simon [D. C.] 146 Fed. 89, among others) have been carefully considered, but are not sufficiently persuasive to overcome our settled conviction. Finding no error in the proceedings below, the judgment is affirmed.

PHILIPS, District Judge (dissenting). On mature consideration, I find myself unable to concur in so much of the foregoing opinion as holds that the testimony containing the alleged false answer to the question propounded to the bankrupt, the defendant below, does not come under the protection of the immunity clause to section 7 of the bankrupt act. By the first clause of said section, the bankrupt is required to attend the first meeting of creditors, "if directed by the court, or a judge thereof to do so, and the hearing upon his application for a discharge, if filed." The bankrupt did attend and testify at the hearing of his application for final discharge in response to the subpœna from the referee, which was equivalent to the order of the court. The second, third, fourth, fifth, sixth, and seventh clauses of the section pertain merely to acts to be done by the bankrupt in aid of the administration of the estate, which do not involve the making of an oath by him. The eighth clause imposes upon him the duty of preparing under oath a schedule of his property and a list of his creditors. As this is not "testimony," but is an oath per se, it comes clearly within the purview of section 29b (2) of the bankrupt act, on which an indictment may be predicated. Then follows subsection 9 of section 7, which declares that:

"When present at the first meeting of his creditors, and at such other times as the court shall order, submit to an examination concerning the conduct of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate; but no testimony given by him shall be offered in evidence against him in any criminal proceeding."

The bankrupt submitted himself on such order "to an examination concerning the conduct of his business, * * * his dealings with other persons, * * * and the whereabouts of his property." It was in respect of his dealings with certain goods coming into his possession, claimed to belong to the estate, about which he was interrogated, and is alleged to have answered falsely. Immediately in this connection occurs the immunity provision that "no testimony given by him shall be offered in evidence against him in any criminal proceeding." Among the objects of such examination of the bankrupt, either at the first meeting of his creditors or at the hearing of his application for final discharge, is the conservation of the interests of the estate in the matter of discovering assets and obtaining other information, as "matters which may affect the administration and settlement of his estate." To induce him to make answer and to waive his right to stand mute where any fact elicited from him might subject him to criminal prosecution, this proviso was evidently added. He had made oath to his schedules, purporting to cover and account for all his property. Concededly, no testimony he might give on such examination could be employed against him on a criminal prosecution for having made a false oath to such schedule. But it is asserted that such immunity of section 7 extends only to the offering of any testimony he may give on such examination against him where he is indicted for making a false oath in some other matter pertaining to the proceedings in bankruptcy, and that the purpose of Congress was to induce

him to tell the truth, and not a falsehood, about the matter inquired about. It ought to be sufficient, it seems to me, to say that this proviso does not so state. Its language cannot be extended by implication where it is sought to deprive the citizen of his liberty. In plain and unambiguous language the statute says to the bankrupt, when he submits to the examination by the court, that "no testimony given by you on this hearing shall be offered against you in any criminal. proceeding, and therefore you need not stand on your right to remain mute, but you may testify as you may, with full impunity." No case could be made out against him under an indictment for perjury without offering in evidence his testimony given in the examination. It would be little less than a fraud upon him to induce him to take the witness stand and testify under statutory language so broad, and then hold that the immunity was intended by Congress to apply only to the instance where he may be indicted for having sworn falsely in some other matter. If Congress so intended, it should have said so, which it could have expressed by the addition of a few words. This is what Congress did in the act of February 25, 1868 (chapter 13, § 1, 15 Stat. 37, now section 860, Rev. St. [U. S. Comp. St. 1901, p. 661]), where it declared that no discovery or evidence obtained from a party or witness by means of a judicial proceeding "* * * shall be given in evidence, or in any manner used against him or his property or estate, in any court of the United States in any criminal proceeding." But in order to place the limitation upon the immunity asserted in the majority opinion, Congress inserted the following proviso: "That this section shall not exempt any party or witness from prosecution and punishment for perjury committed in discovering or testifying as aforesaid." So in the act of February 11, 1893, (chapter 83, 27 Stat. 443, 444 [U. S. Comp. St. 1901, p. 3173]), relating to the testimony in investigations, etc., under the interstate commerce law, after requiring persons to appear and produce books and testify, under the assurance of exemption from prosecution for anything concerning which the party might testify, Congress added the proviso: "That no person so testifying shall be exempt from prosecution and punishment for perjury committed in so testifying." From which it appears that in the understanding of Congress, the broad terms of said statutes exempting the party testifying from prosecution, it would embrace a prosecution for perjury predicated on his testimony so given. Therefore, it added the proviso that he would not be exempt, however, from prosecution and punishment for perjury committed in so testifying. The omission of this proviso from subsection 9 of section 7 of the bankrupt act is most significant. Congress was legislating respecting proceedings under the bankrupt act, and it made all the provisions deemed by it advisable. Evidently enough, it did not conceive that said section 860 of the General Statutes was applicable.

The objection interposed by the defendant below to the admission of his testimony given before the referee in bankruptcy, in my judgment, should have been sustained, and the defendant discharged.