## Staunton.

### FORD & BENNICK, TRUSTEES, v. WATTS, SHERIFF AND OTHERS.

#### SEPTEMBER 23, 1897.

1. INJUNCTION AGAINST SALE UNDER EXECUTION—*Motion to Dissolve—Executions in Evidence—Case at Bar.*—Upon a motion to dissolve an injunction awarded on a bill filed to enjoin the sale of personal property under executions levied thereon, the court of necessity must consider the executions, and, upon the evidence in this cause, it appears that they were considered. They are therefore properly copied into the record of this cause.

2. TRUSTEES—*Suits to Administer Trust—Possession of Trustee is Possession by the Court—Interference—Adverse Claims.*—The possession of a trustee, acting under the orders of a chancery court, in a suit instituted by him for the purpose of administering the trust, is the possession of the court in which the suit is pending. The trustee occupies the same position, in respect to the trust property under his control, as if he were a receiver appointed by the court. No interference with the possession of such trustee will be tolerated, without the leave of the court first obtained, and any attempt at such interference will be restrained by injunction for that purpose. Adverse claimants must assert their claims in the court having jurisdiction over the trustee and the trust subject, or obtain leave of that court to sue the trustee.

Appeal from a decree pronounced August 15, 1896, by the judge of the Circuit Court of Shenandoah county, in vacation, in a suit in chancery wherein the appellants were the complainants, and the appellees were the defendants.

*Reversed.*

The opinion states the case.

*Patrick & Gordon*, for the appellant.

*Elder & Elder*, for the appellees.

CARDWELL, J., delivered the opinion of the court.

The motion of appellees to exclude from the record the two executions hereinafter more particularly mentioned is overruled. Besides the affidavit of William Patrick, of counsel for appellants, supported by the affidavit of Ford, one of the appellants, that by agreement with counsel representing appellees in the court below these two executions were treated as before the judge of that court when the motion to dissolve the injunction granted in this cause was heard; that both sides treated the executions as before the court, and that the argument of counsel on the motion to dissolve was based on them, the character of the question presented to the judge for his decision on this motion was such as to require that the executions be considered as a part of the record. It was alleged in the bill or petition, upon which the injunction was granted, that the two executions had been levied by a deputy for the sheriff of Augusta county upon property claimed by petitioners, appellants here, and held by them under the order of the court in the cause in which their petition was filed, and that by virtue of the levy the property had been advertised for sale, &c. It was to enjoin this sale that the injunction was granted, and, of necessity, the executions were considered upon the motion to dissolve, and they were therefore properly copied into the record brought to this court.

Not so as to the execution of November 4, 1895. There is no pretence that this execution was before the judge of the Circuit Court when the motion to dissolve the injunction was heard, by agreement of counsel, or otherwise. But in the view we take of this case it is immaterial whether this execution be considered as a part of the record or not.

This is an appeal from a decree of the Circuit Court of Shen-

andoah county, in vacation, dissolving an injunction awarded upon the petition of appellants in the suit of *Ford & Bennick, Trustees,* v. *Rosenberger and others* pending in that court, restraining certain execution creditors of Rosenberger and Shirley from selling a part of the trust property in the possession of apppellants, as trustees, and being administered in that suit; the trustees, acting under the orders of the court therein, having sold the property, retaining title thereto as security for the purchase money, subject to confirmation by the court, and the sale not having been confirmed. The question presented, therefore, is: Was it the duty of the court, upon the petition of the trustees in the pending cause of *Ford & Bennick, Trustees,* v. *Rosenberger and others,* to enjoin the sale of the property under the executions, thereby compelling the execution creditors to come into that suit and litigate their rights to sell the property in question, to satisfy their executions?

A. R. Rosenberger and S. P. Shirley, partners in the business of banking, at Basic City and other places in the State of Virginia, failed, and on the 21st day of December, 1891, to secure their creditors, conveyed by one deed their partnership and separate and individual property to V. H. Ford and C. W. Bennick, trustees. Amongst the property belonging to Rosenberger, as his separate property, and conveyed by this trust deed as such, was a five years' lease on the Hotel Brunswick, at Waynesboro, Va., and the furniture and fixtures in the hotel.

The clause in the deed under which the trustees claim the property, which is the subject of this controversy, as far as need be set out, is as follows:

"And (5). A lease held by him, the said Rosenberger, of the Hotel Brunswick, in Waynesboro, Augusta county, Va., together with a sub-lease made by him of said hotel to Miss Fannie W. Hill, of Richmond, and also all the furniture and fixtures in said hotel, which is mentioned and fully described in a list or inventory thereof in the possession of Miss F. W. Hill, which said furniture is intended to be conveyed according to said list and inventory," &c.

Immediately upon the execution of this deed, Ford & Bennick, trustees, took possession of all the property conveyed to them, and made an inventory thereof—the possession of the furniture and fixtures in the Hotel Brunswick being subject, of course, to Miss Hill's lease—and filed their bill in the Circuit Court of Shenandoah county, making all necessary parties defendants thereto, asking the direction of the court in the administration of the trust, and in this suit, still pending—styled *Ford & Bennick, Trustees*, v. *Rosenberger and others*—accounts of the debts secured by the trust deed, and of the property and assets conveyed thereby, were taken, and the trustees have been administering the trust estate under the orders of the Circuit Court of Shenandoah county in that suit, among which orders was one directing the trustees to sell at private sale any of the property covered by the trust, but any such sale to be subject to the confirmation of the court.

On the 18th of February, 1893, an agreement in writing was entered into between the Waynesboro Company (acting by its committee appointed for the purpose, among whom was W. N. Fishburne, one of the appellees), and Ford & Bennick, trustees, whereby the leases referred to in the clause of the deed above quoted were cancelled, a complete list or inventory of the furniture and fixtures taken and made a part of the agreement, and the hotel turned over to the Waynesboro Company, but the furniture, &c., to remain in the hotel for the use of its tenant, until March 1, 1896. Upon this agreement is this endorsement:

"This contract is hereby cancelled this 4th day of March, 1896, and settled in full except as to $60.00 insurance, which is to be paid June 1st, 1896. The property specified in this contract this day turned over and accepted by V. H. Ford, trustee.

[Signed.]            W. N. FISHBURNE,
                     J. F. TEMPLETON,
                          *For the Waynesboro Co.*
                     V. H. FORD, *Trustee.*"

Being then in the possession of the furniture and fixtures in the Hotel Brunswick, and acting under the decrees of the Circuit Court of Shenandoah county, Ford & Bennick, trustees, on the 6th of March, 1896, contracted with W. C. McDowell, who had leased or purchased the Hotel Brunswick, to sell the latter, as a whole outfit, all the furniture and furnishings in the hotel, including carpets, rugs, curtains, bedsprings, and all other articles therein that were conveyed to these trustees by the deed of December 21, 1891, the articles of furniture, &c., being then inventoried and classified, and the price agreed on being the gross sum of $1,778.70, one-half paid in cash, and the other half to be paid on or before the first of January, 1897, with interest from date of sale, and the contract of sale, in writing, expressly stipulating that the title to none of the furniture and fixtures was to pass until the deferred instalment of the purchase money was paid, but was to remain vested in Ford & Bennick, trustees, and of course the sale was subject to confirmation by the Circuit Court of Shenandoah county in the suit of *Ford & Bennick, Trustees,* v. *Rosenberger and others.*

On the same day, March 6, 1896, W. N. Fishburne (appellee) sued out of the clerk's office of Augusta County Court and execution upon a judgment in favor of Henkel & Fishburne (of which firm W. N. Fishburne was a member), against Rosenberger and Shirley for $97.43 and costs; and on June 5, 1896, he caused to be issued from the same clerk's office an execution, in favor of the firm of Bolling & Kivilighan, upon a judgment of this firm against Rosenberger and Shirley for $1,025.83 with interest and costs; both of these judgments having been recovered after the execution of the deed of December 21, 1891. These two executions were placed in the hands of D. A. Bell, deputy for the sheriff of Augusta county, who levied them upon certain of the furniture and fixtures in the Hotel Brunswick, such as carpets, rugs, curtains, bedsprings, &c., and advertised the property for sale on June 27, 1896.

The bill or petition of the trustees upon which the injunction

was awarded restraining the sheriff of Augusta county, his deputies, W. M. Fishburne and Bolling & Kivilighan, their agents, &c., from selling the property levied on, set out substantially the facts above stated, and charged that a sale of the property under the executions would irreparably damage the trust property in the possession of the trustees, in that it would affect, if it did not defeat, the sale to McDowell, as the sale was agreed to be made of the furniture and fixtures in the hotel as a whole outfit, and upon a guarantee that the title thereto was good, &c.

The motion to dissolve the injunction was heard August 13, 1896, upon the bill or petition of Ford & Bennick, trustees, the answer of W. N. Fishburne thereto, general replication of petitioners to the answer, affidavits read by each party, the record in the suit of _Ford & Bennick, Trustees,_ v. _Rosenberger and others,_ copy of the contract of sale between the trustees and McDowell, and other documentary evidence; whereupon the injunction was dissolved, "but without prejudice as to the title of the property, the sale of which was enjoined."

The answer of W. N. Fishburne, after stating that he was interested in the judgments upon which the two executions were issued, says: "that he caused the executions to be issued and levied, and after giving to the officer in whose hands they were placed indemnifying bonds as required, instructed that officer to take possession of the property levied on, and make sale thereof, &c.; his contention being that the property levied on, not being embraced in the list of furniture in the possession of Miss Fannie W. Hill (who had become his, Fishburne's, wife), referred to in the deed of assignment from Rosenberger and Shirley to Ford & Bennick, trustees, did not pass to these trustees under that deed, and that in any event the trustees would have a complete remedy at law for any injury done them by a sale of the property, but he files with his answer neither copies of his alleged indemnifying bonds nor of the list or inventory of the furniture in the Hotel Brunswick then in the possession of his wife, relying alone, to support his contention, that the

property levied on is not upon the inventory or list in question, upon affidavits of persons who state that they have examined the list and could not find these articles upon it; while the two affidavits of Mrs. Fishburne offered by her husband, W. N. Fishburne, also in support of his answer, though saying that the "list or inventory" was then and had been in her possession since the 1st day of December, 1891, are silent as to whether or not these articles are upon that list.

It is obvious that the learned judge below took the view, that the Circuit Court did not have jurisdiction to hear and determine in the pending suit of *Ford & Bennick, Trustees,* v. *Rosenberger and others,* the question raised by the pleadings in the injunction proceedings, and that the parties should be left to their remedies at law. In this view we do not concur. As has been shown, this property was, when levied on and advertised for sale, and had been ever since the institution of the suit of *Ford & Bennick, Trustees,* v. *Rosenberger and others,* in which the property conveyed in the deed of December 21, 1891, was being administered, in the possession of Ford & Bennick, trustees, subject to the orders of the court in that suit. In that suit an account of the debts against Rosenberger and Shirley had been taken, and the debts for which the executions issued, or at least the larger one of them, had been taken account of therein, and the trustees having sold the property in question subject to the confirmation of the court in the pending suit, and the sale not having been confirmed, it was clearly their duty to apply to the court to restrain those execution creditors from interfering with the possession of the property, and indeed it would seem that there was no other course open to the trustees.

In discussing the nature of the possession of receivers, High, in his work on Receivers, sec. 134, says: "The precise nature of the possession held by a receiver in the property or estate entrusted to his charge, is frequently a question of much importance in determining the relative rights of conflicting claimants to, and parties interested in, the property. The general

propositon is well established that the receiver being the officer
or agent of the court from which he derives his appointment, his
possession is exclusively the possession of the court, the property
being regarded as in the custody of the law, in *gremio legis*,
for the benefit of whoever may be ultimately determined to be
entitled to its possession.   The receiver's possession, therefore, is
neither adverse to the plaintiff or to the defendant in the litiga-
tion, being only the possession of the court, which holds the prop-
erty for the greater safety of all parties in interest, the primary
object being to secure the thing in controversy, so that it may be
subject to such  disposition as the court may finally direct.
*   *   *   *   *   *   *   *   ." In section 139: "The possession
of the receiver being, as already shown, regarded as the exclusive
possession of the court from which he derives his appointment,
the courts are exceedingly averse to allowing any unauthorized
interference therewith, and will not . tolerate any attempt to
disturb him in his rightful possession, without leave of court
first obtained for that purpose   *   *   *   *   *   *   *   *."
In sec. 141:  "So extremely jealous are courts of equity of any
interference, *pendente lite*, with the possession of their receivers,  .
that they will not ordinarily permit property which is the sub-
ject of the receivership to be sold on execution   *   *   *   *   *."
The proper remedy for a judgment creditor, who desires to ques-
tion the receiver's right to the property, is to apply to the court
appointing him, to have the property relieved from the receiver's
custody, in order that he may proceed against it under his judg-
ment.  Since to permit the property, while in the custody of the
receiver, to be levied upon and sold under the process of another
court, would at once give rise to a conflict of jurisdiction, and
would seriously interfere with and impair the receiver's right
to the management of the property under his appointment.  And
while the principle, as above stated, is not understood as pro-
hibiting absolutely the acquisition of new rights to the fund or
property in controversy, pending the receiver's possession, it yet
prevents the person so acquiring rights from asserting them by

the process of another court, thus compelling him to apply to the court having jurisdiction over the property and the receiver for a determination of his rights. * * * *." See also *Skinner* v. *Maxwell*, 68 N. C. 400.

Why does not this principle apply as well to a trustee performing his duties as such, under the orders of a court of equity in a pending suit, which he himself has brought for the administration of his trust, and in which the creditors interested in the trust subject have been convened, as to a receiver of the court? Would the situation have been changed had the court below appointed Ford & Bennick, trustees, receivers in the pending suit, as is frequently done, or even appointed another, the receiver of the court? Whether the trustees would be permitted to execute the trust under the orders of the court, or a receiver be appointed for that purpose, was wholly within the discretion of the court. The court below having acquired jurisdiction over the trustees and the subject of the trust, it would seem as much its duty to protect the trust property from sale under an execution, as if the trust property was being administered by its receiver.

It was said by this court in *Maddux* v.*Triplett*, 89 Va. 323, that where a court of equity had acquired jurisdiction over a trustee and the subject of the trust, he was powerless to exercise his functions as trustee without the express order of the court allowing him to proceed. See also *Ga. Home Ins. Co.* v. *Bartlett*, 91 Va. 305.

An analogous case to the one at bar is to be found in 22 S. E. (*Woodburn* v. *Smith*), p. 964. In that case the assets of an insolvent partnership, consisting of a sawmill outfit— engine, machinery, land, and leases of timber privileges in certain lands, were being administered by the court in a suit brought by the creditors of the firm, and the receiver of the court was directed to make sale of the property, subject to a confirmation by the court. He did sell the property as a whole outfit, and, before the sale was confirmed by the court, a third party set up

a claim to some of the timber privileges as paramount to the title in the receiver, and threatened to drive the purchasers from the receiver from the land, and refused to allow them to go upon it to obtain the timber. In that case, as here, title to the property was reserved by the receiver until the full payment of the purchase money, and the receiver filed his petition in the pending cause setting out his sale, under the order of the court, of the sawmill, &c., as a whole outfit, and the resistance of the third party to the possession and control of a part of the timber privileges embraced in the sale; that the suit in which the petition was filed was commenced for the purpose of settling the affairs of the insolvent partnership in equity; was instituted for the benefit of all creditors who were asked to come into the suit and prove their claims in order that the partnership affairs might be fully and finally administered, and that the party claiming a superior right to a part of the property sold by the receiver had an adequate remedy to obtain all his rights by coming into the litigation and proving his claims as a creditor. An injunction was granted upon this petition of the receiver according to its prayer, but upon a motion to dissolve, heard upon a demurrer to the petition before the Superior Court, the injunction was dissolved, and the case taken to the Supreme Court of Georgia upon appeal. The Supreme Court reversed the court below, and in its opinion said: "It will be observed that the property claimed by this defendant, having been in the possession of the receiver as a part of the assets of Laurance and Jackson, was in fact sold by the receiver under an order of the court, the receiver reserving title until the purchaser had fully paid the purchase money, and until confirmation of his sale by the chancellor. The possession of the purchaser then was, to all intents and purposes, the possession of the receiver. It was the duty of the receiver to maintain the possession of his vendee, and in furtherance of that duty it was his right to apply for an injunction in order to protect that possession. The remedy of a person claiming property adverse to a receiver is not to regain it by an act of

trespass, but to apply to the court for redress, or for leave to sue the receiver. And in thus restricting claimant or third parties from interfering with the receiver's possession, without leave, the rule is applied regardless of whether such persons claim paramount to or under the right which the receiver was appointed to protect. It is frequently necessary for a receiver to pray for an injunction to restrain any unauthorized interference with the property in his possession, and the granting of such an injunction in such cases is a necessary incident to the power of appointing a receiver."

The receiver's contention in his petition was that to take from or to interfere with this timber as a part of the saw-mill outfit sold by him would interfere with his sale, and greatly disturb a proper administration of the assets of the insolvent firm being administered in the pending litigation.

The sound reasoning of the court in the case of *Woodburn* v. *Smith, supra,* is entirely applicable to the case at bar. We are of opinion that the court below should have continued the injunction awarded in this case, and settled the rights of all parties concerned as to the property levied on and advertised for sale in the pending suit of *Ford & Bennick, Trustees,* v. *Rosenberger and others,* and the decree appealed from must therefore be reversed, and this cause remanded to the Circuit Court for such proceedings therein as may appear proper in accordance with the views expressed in this opinion.

*Reversed.*