HALL et al. v. AMES et al.

(Circuit Court, D. Maine. November 23, 1910.)

[No. 661.]

COURTS (§ 493*)—FEDERAL AND STATE COURTS—CONCURRENT JURISDICTION—JURISDICTION FIRST ASSUMED.

·Two sets of stockholders transferred their shares to a trust company to prevent a third set from acquiring control under an agreement that the trustee should sell the shares for such price and at such time as named stockholders or a majority of them might direct, providing that sufficient shares were sold to constitute a majority of the outstanding stock, and also providing that the sale should be made before December 31, 1908. The sale having been advertised shortly before the expiration of the time, complainant H. and certain other stockholders instituted a suit in the state court to enjoin the same. A preliminary injunction having been granted, the court ordered a dissolution thereof, unless complainants stipulated that the·cause should be prosecuted to final decree, and that, if the bill was dismissed, the stock might be sold under the trust agreement. Complainants having agreed to this, the cause was tried in the state court, and a decree made adjudging the trust agreement valid, directing a- sale, providing for control thereof by the court, jurisdiction for that purpose being retained and for the ultimate dismissal of the bill. *Held*, that the state court thereby acquired exclusive jurisdiction over the subject-matter of the suit and that, while such jurisdiction remained, complainants could not maintain a bill in the federal court to restrain the sale of the stock on the theory that the only jurisdiction the state court had, on determining that the trust agreement was valid under the pleadings, was to dismiss the bill. · .

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1346–1353; Dec. Dig. § 493.*]

In Equity. Suit by James M. W. Hall and others against Alfred K. Ames and others. Application for interlocutory·injunction. Denied and bill dismissed.

Symonds, Snow,. Cook & Hutchinson, Tyler & Young, Burton E. Eames, and Randolph Frothingham, for complainants.

Herbert M. Heath, for defendants.

PUTNAM, Circuit Judge. As there is a long and continuous line of decisions of the Supreme Court of the United·States.putting beyond doubt the disposition of this ·case; we do not feel called on to elaborate the statement in regard to it.

On or·about January 25, 1905, the·complainants·deposited with the Merrill Trust Company,·one ·of the respondents, ·sundry shares of the capital· stock of the Machias Lumber Company, a corporation created by the laws ·of the state ·of Maine, to be held and finally sold to the trust corporation, subject to directions to ·be given by James M. W. Hall and ·the· respondents ·Wing· and· Ames, or a majority of them. Some other conditions were contained in ·the terms of· deposit, but it is not necessary that we should detail them as the case now stands. By the terms of deposit and the subsequent agreement of extension, the limitation on the power of sale was fixed at December 31, 1908. Subsequently, on or about November 10, 1908, the complainant James M. W. Hall read a newspaper notice that the stock thus .deposited

would be sold at auction on November 25, 1908. Whereupon he brought a bill in equity in the Supreme Judicial Court of Maine seeking to enjoin the sale; the bill having been filed in behalf of himself and all other stockholders. The bill was originally filed by James M. W. Hall against the same respondents as appear here. Subsequently James R. Hall and Morris A. Hall became parties complainant by intervention; so that the parties to the suit in the Supreme Judicial Court of Maine when determinative action was taken were the same as exist here. There have been some minor withdrawals from the deposit and some minor additions thereto which occurred prior to the filing of the bill in the Supreme Judicial Court of Maine, and possibly there have been some changes since; but for all substantial purposes the mass of the shares of stock to which the proceedings in the Supreme Judicial Court related are identically the same as the mass of the same involved here. Therefore we have in both proceedings identically the same parties and the same property. Each court had complete jurisdiction over all the parties respondent, as well as full jurisdiction over the Machias Lumber Company; so that it was fully within the power of each to declare the transfers of the shares of the capital stock of the Machias Lumber Company valid according to the legal rules which might be found to apply thereto, and to give efficiency to the same. Both in the Supreme Judicial Court of Maine and in this court the proceedings were and are in equity; and, on the face of each bill, each court respectively had full jurisdiction in equity to shape out such remedies as the case might involve. Therefore there is no question of jurisdiction whatever as to either court within the legitimate interpretation of that word.

The bill in the Supreme Judicial Court of Maine was brought mainly to restrain the proposed sale of the shares of the capital stock involved, and apparently solely for that purpose. The Supreme Judicial Court of Maine decided that the deposit was a valid one, and that the proceedings looking to a sale were proper, and that no injunction should be granted; so that, except for what we shall explain, the proper decree would have been merely a dismissal of the bill on its merits, with costs. As the proceedings developed, however, it became apparent that the court could not dispose of the bill finally within the limit of December 31, 1908, which we have stated. On the filing of the bill in the Supreme Judicial Court of Maine, a preliminary injunction was granted, the complainants having filed a bond to the respondents. Subsequently, on December 26, 1908, a temporary injunction, properly so called, was made as prayed for in the bill by an order which contained the following stipulation agreed to by the complainant James M. W. Hall. This stipulation was expressly agreed to by all the counsel of record, as will appear by what we quote with reference thereto, and the whole was entered of record. We find it expressed to us in the following terms:

"Order on Temporary Injunction.

"This cause came on to be heard this day on the motion of the defendants, Wilson D. Wing and Alfred K. Ames, of date of December 15, 1908, praying

182 F.—64

for a dissolution or modification of the temporary injunction now in force, and after notice and hearing, and argument of counsel,

"It is ordered, adjudged and decreed:

"That the temporary injunction be dissolved unless the plaintiff on or before 12 o'clock noon of December 28, 1908, files stipulation agreeing therein. .

"(1) That this cause shall be prosecuted to final decree.

"(2) That during the pendency of this bill the Merrill Trust Company shall not vote the stock as provided in said trust agreement, but it shall be voted by the beneficial owners thereof, each for himself. No treasury or new stock shall be sold or issued during the pendency of this bill.

"(3) That, if the bill is dismissed on final decree, said shares may be sold under the trust agreement, provided there shall be sold at the same time sufficient shares as, reckoning in said three hundred and sixty-one (361) shares, shall be at least a majority of the shares of the capital stock of the Machias Lumber Company then outstanding.

"(4) That the trust agreement, except as to the sale called for upon the contingency of an entry of a dismissal of this bill on final decree, terminates on December 31, 1908, as therein provided.

"When said stipulation shall be so filed, the bond of the plaintiff under the temporary injunction shall be released.                    "Geo. E. Bird,
                                        . "Justice Supreme Judicial Court.

"I hereby agree to the stipulation required by the foregoing order but without prejudice.                                        James M. W. Hall.

"Bond of plaintiff is hereby released as required by the foregoing order.
                                        "Wilson D. Wing.
                                        "Alfred K. Ames.
                                        "Merrill Trust Co.          .
                                            "By H. M. Heath, Attorney.

"Seen and agreed to:    .
    "Symonds, Snow, Cook & Hutchinson,
        "Attys. for Plaintiff.
    "Heath & Andrews,
        "Attys. for Defendants."

Afterwards the bill went to a full hearing, and was decided according to an opinion filed on March 26, 1910, found in 76 Atl. 926. That opinion sustained the legality of the deposit, and the proposed proceedings for a sale, and held that the complainant had no right to an injunction. In accordance with what the court understood to be the effect of the stipulation of the parties we have quoted, the opinion ended as follows:

"Under the stipulation, the decree below must be so framed as to direct the trustee to sell all the stock now in its hands, at public auction, after due notice to all the equitable owners, with the same effect as if made before December 31, 1908."

Then it ended with the following order:

"Decree in accordance with this petition."

We are not concerned in the equity practice of the Supreme Judicial Court of Maine with reference to the method of shaping a decree, because we are not bound by that practice, whatever it may be. We understand, however, that the decree is shaped by a single judge, with the right of review on appeal if either party claims it. However this may be, the decree we find in the record entered by a single judge on April 27, 1910, is conclusive so far as the state court is concerned. That decree was as follows:

"This cause came on to be further heard this day and was argued by counsel; and thereupon, upon consideration thereof, it is ordered, adjudged, and decreed, as follows, viz.:

"(1) The bill is retained until the stock now in the hands of the Merrill Trust Company, trustee, is sold hereunder.

"(2) The trustee is directed to sell at public auction all the stock now in its hands after due notice to all the equitable owners thereof with the same effect as if made before December 31, A. D. 1908.

"(3) The sale aforesaid shall be made at the office of the trustee in Bangor. Notice thereof shall be given by the trustee to James M. W. Hall, James R. Hall, Morris A. Hall, Stillman F. Kelley, Wilson D. Wing, Alfred K. Ames, Frank S. Ames, and to Alfred K. Ames and Frank S. Ames as administrators of the estate of John K. Ames, severally the equitable owners of said stock, by registered letter, postage prepaid, mailed at least 30 days before the time thereof, and by publication thereof for at least one week in the Bangor Daily Commercial, the Bangor Daily News, and the Boston Evening Transcript, the last publication to be at least 30 days before said sale.

"(4) After notice as aforesaid, and sale thereunder at public auction, the trustee shall indorse, transfer, and deliver to the purchaser all the stock now in its hands and so sold.

"(5) After such sale and delivery, the trustee shall report its doings hereunder to this court, and thereupon the bill shall be dismissed with a single bill of costs for defendants."

In the bill before us, we are asked to restrain the sale of the same mass of shares of stock in question, with some incidental prayers for relief which will be referred to later.

It is now claimed that as the bill in equity in the Supreme Judicial Court of Maine sought only to restrain the sale, and the court held that the sale could not be restrained, all that remained was to dismiss the bill, and that as to everything beyond that the bill would be functus officio, so that the court was entirely without jurisdiction to direct a sale of the property. The ordinary rule that the remedy depends on the allegations of the bill is relied on; and it is claimed that the decree entered was unauthorized as being beyond the substance of the suit and of what was asked for by it, and that this court might regard the decree therefore as not binding it.

We do not understand that there is any claim that the Supreme Judicial Court of Maine did not intend to order a sale, and we think it clear on the face of the proceedings that it did. The opinion which we have quoted closed with a specific direction that the trustee, meaning the Merrill Trust Company, should sell the stock; and the decree apparently put this beyond question. Of course, the decree might have been so expressed as to simply indicate that the powers of the trustee—that is, the Merrill Trust Company—were unaffected by the proceedings, and that, as the result of the proceedings and agreement filed therein, the limit of December 31, 1908, had been removed; but such was not its effect. The most significant thing, and the thing which is the most clearly effectual so far as we are concerned, is the provision that the bill should be retained until the stock was sold under the decree; and then the decree expressly provided that "the trustee is directed to sell at public auction." The decree in the third paragraph elaborated the details in reference to the sale, and the notice to be given thereof. The fourth paragraph went so far as to give directions for the transfer of the stock after the sale, and

the fifth paragraph directed the trustee to report the sale to the court. Thus, not only were express directions given by which the Supreme Judicial Court of Maine assumed to control the sale, but it was provided that the sale should be reported to that court, thus, by implication, giving the court power to affirm the sale, as usual, or to direct a new one. It is true that the decree closed with the insistent provision that, after the sale, the bill should be dismissed. Nevertheless, either with or without that provision, the retaining of the bill for further directions expressly provided for was a very efficient thing to such an extent that the stock is still under the control of the Supreme Judicial Court of Maine; and any subsequent litigation between the same parties in reference to that stock would be an absolute infraction of the rights of that court in regard thereto, in so far as it undertook to make any order which would restrict it directly or indirectly, from giving full effect to its decrees already made, or from recalling those decrees and modifying them in any way, or from making such further directions as the development of the equities of the case might require.

In other words, the Supreme Judicial Court of Maine, by the mere fact of the filing of the bill referred to here, in connection with the fact that that court had undertaken to proceed under that bill, acquired full jurisdiction over the shares of stock in question, and of the deposit or trust in reference thereto, which cannot be disturbed in any manner by any litigation between the same parties in regard to the same or similar questions, or any litigation which would interfere with the free control of the shares of stock in question, and of the trust in question, by the Supreme Judicial Court of Maine. The filing of the bill in that court, and any procedure on the part of that court in reference thereto, gave it this exclusive jurisdiction over that so-called res as against any other proceedings subsequently commenced. This has been the rule of the Supreme Court of the United States from the time of the decision in Chittenden v. Brewster, 2 Wall. 191, 196, 17 L. Ed. 839, decided in 1864, and even theretofore. This rule has subsequently been repeated, reaffirmed, and broadened out by numerous decisions of the Supreme Court to which it would be burdensome to refer.

Notwithstanding this, and subsequent to all proceedings to which we have referred, the same parties, namely, James M. W. Hall, James R. Hall, and Morris A. Hall filed their bill in this court against the same respondents, namely, Ames, Wing, and the Merrill Trust Company, asking us to enjoin the proposed sale by the Merrill Trust Company of the shares of stock in question, and asking other remedies growing out of or connected with such sale, which we are unable to perceive that we could take any favorable action upon without a direct infraction of the rights of the Supreme Judicial Court of Maine, even if not an infraction of the decree which it has already entered.

The main basis of the present proceeding is, as we have stated, that the Supreme Judicial Court of Maine went beyond its powers, and, indeed, as claimed, beyond its jurisdiction, in going further than to dismiss the bill; but what the Supreme Judicial Court did was by

the express agreement of the parties under such circumstances that, if an agreement had not been given, the limitation of December 31, 1908, would have been annulled by the action of the court, unless avoided by an immediate dismissal of the bill pending there, which the complainant did not desire. The circumstances are such that an equitable estoppel arises against any attempt to impair the decree in the Supreme Judicial Court in order to prevent clear injustice. It is true, moreover, that on strict principles of pleading and procedure the relief which the respondents secured by the form of this decree could properly have been secured only by a cross-bill; but, as under a cross-bill the Supreme Judicial Court of Maine would clearly have had jurisdiction to order a sale, and might properly have done so without any question as to the regularity of procedure or of its powers, it certainly cannot be claimed that it was not within the privilege of the parties, with the consent of the court, to avoid the indirection, expense, and delay of a cross-bill, and make a short cut by common consent, as was done. From the beginning to the end, with the consent of the parties, the whole procedure was within the jurisdiction of the Supreme Judicial Court of Maine, although, of course, it would not have been except for that consent.

But we ought to go further. The Supreme Judicial Court of Maine having had full jurisdiction over the parties and the assets in dispute, it is not for us to investigate the regularity of its proceedings; and, even if we did, in view of the fact that that court has retained the bill for further consideration, and therefore possibly for further proceedings, we could not at the present stage violate its custody of the so-called res, though only by implication of law.

As to the first proposition, the complainants have cited as a leading case Elliott v. Peirsol, 1 Pet. 336, 340, 341, 7 L. Ed. 164. There a court assumed jurisdiction over a county clerk, as to whom it had no jurisdiction whatever; but the opinion of the Supreme Court stated that, where a court has jurisdiction, it has a right to decide every question which occurs in the cause. It added:

"And, whether its decision be correct or otherwise, its judgment, until re versed, is regarded as binding in every other court."

This general language is accepted in Guaranty Trust Co. v. Green Cove Springs Co., 139 U. S. 137, 147, 11 Sup. Ct. 512, 35 L. Ed. 116, relied on by complainant. That was a procedure against a nonresident in a foreclosure suit, and the statutory notice required was never given; so that the court never acquired jurisdiction at all.

Of course, there are exceptions where the court has exhausted its powers, and then gone beyond its authority, as in Ex parte Lange, 18 Wall. 163;[1] where, after a convicted criminal had served a part of his sentence, the court recalled the sentence and imposed a new one. In such cases the powers of the court became functus officio before the new act was performed, and jurisdiction had absolutely ceased. So, also, Williamson v. Berry, 8 How. 495, 12 L. Ed. 1170, relied on by the complainants. There it appears at page 543 of 8 How., 12 L. Ed. 1170, that the court was dealing with a statutory tribunal of lim-

[1] 21 L. Ed. 872.

ited jurisdiction. The latter had taken up a matter with which from the beginning it had no authority to deal.

In Thompson v. Tolmie, 2 Pet. 157, 168, 7 L. Ed. 381, it was said very promptly, after the announcement of Elliott v. Piersol, that nothing in that decision was intended to infringe the general rule which we have stated, and which general rule was then quite fully elaborated. The same rule was discussed and applied in Kempe v. Kennedy, 5 Cranch, 173, 3 L. Ed. 70, decided in 1809. It was brought out there in a very pointed manner by Chief Justice Marshall at page 184 of 5 Cranch (3 L. Ed. 70), where the points argued were said to have been (1) that the prior judgment was clearly erroneous, and (2) that it was therefore an absolute nullity. The Chief Justice observed that, however clear the opinion of the court might be on the first point, the result would avail nothing unless it succeeded on the second. This was an extreme case to the effect that the prior proceedings could not be revised. The latest decision to the same general effect on which we can put our hands at the moment is Alexander v. Crollott, 199 U. S. 580, 26 Sup. Ct. 161, 50 L. Ed. 317, decided in 1905, where quite a list of authorities is given at page 581. Although there the immediate consideration was a writ of prohibition, or, in the alternative, a writ of mandamus, the rule so far as this case is concerned is precisely the same. In so many different ways and in so many different decisions has the Supreme Court reiterated the principle involved that we need not explain further, for the purpose of elaborating the proposition, that we cannot revise, either directly or indirectly, the proceedings of the Supreme Judicial Court of Maine on the record before us. The rules which govern us are precisely the same as would govern any court of superior and general equity jurisdiction, whether as between a federal court and a state court or vice versa.

But it is insisted that relief is sought for here which was not in issue before the Supreme Judicial Court of Maine, or not disposed of by it. All these propositions are met by the fundamental fact that we could not get at those additional issues without walking over the body of what has been decided by that court, or held in reserve by it. We are not at liberty to restrict in any way the powers of that court over the subject-matter involved here, either directly or indirectly, with reference to what has been done or has not been done, or by anticipating what may or may not be done. This is a fundamental rule, stated in Memphis City v. Dean, 8 Wall. 64,[2] decided in 1868, where the headnote correctly observed that a question pending in one court of general jurisdiction cannot be raised and agitated in another by adding a new party, and raising a new question as to him along with the old one as to the former party, inasmuch as the old question is in the hands of the court first possessed of it. This is also reiterated in various forms by the federal courts, and is of plain application here for the reasons we have already stated.

We can illustrate its application by reference to the most important point which the complainants urge on us in this connection. The bill prays that two of the gentlemen referred to, who were selected to direct the sale, namely, Ames and Wing, should be restrained from

[2] 19 L. Ed. 326.

purchasing at any sale thus directed. This proposition is one of general equity jurisprudence, quite as effectually applied by the equity courts of the state as by the federal equity courts. On general principles of equity practice, it is within the province of the Supreme Judicial Court to take cognizance of this proposition when asked to confirm the sale, as, according to those principles, it may be asked to do before the sale is actually completed. It may be that that court would not assume authority to approve or disapprove the sale. We have not been advised about the local practice in that respect. It is at least the duty of the complainant to make the application. If the application is made, and the Supreme Judicial Court refuses to take cognizance thereof, and the shares of stock thus actually pass into the apparent title and possession of Ames and Wing, the status would then have been entirely changed, and the complainant might apply either to us or to any court having general equity jurisdiction within the District of Maine, state or federal, and obtain his relief, if he is entitled to any. Then the shares of stock would pass from the cognizance of the Supreme Judicial Court, and Clarke v. Larremore, 188 U. S. 486, 23 Sup. Ct. 363, 47 L. Ed. 555, would apply. This, however, involves so many contingencies that we need not consider it further. It is enough to say that, so far as the case now stands, non constat the Supreme Judicial Court might not find it necessary for the protection of the other various depositors of shares of stock not involved in this litigation, of whom there are certainly some, that Ames and Wing should be especially allowed to bid at a public sale in their own behalf, or at least to thus bid to a certain extent in behalf of all the shareholders concerned. We have no right to undertake to fetter that court in this respect, either with reference to what it has done or what it may possibly do, so long as it retains any jurisdiction rendering possible further consideration in regard to the matters here involved. Therefore we are unable to ascertain that in any particular are we entitled to take jurisdiction over the bill now before us.

What we are now considering is an application for an interlocutory injunction. Wherever on any interlocutory application, whether of this character or, by way of examples, for urging the trial of issues by jury, or for reference of a title to a master, it is clearly apparent on the record that the bill must finally be dismissed, it is the duty of the court to dismiss the bill when disposing of the preliminary matter. This power should not be exercised except for some fundamental reason, and when it is entirely clear that the bill cannot possibly be maintained on the final hearing. Especially it should not be exercised merely as the result of the examination of informal affidavits taken on application for preliminary injunctions with reference to a dispute on a fundamental question of fact, unless it is clear that no dispute could arise. In the present case we are barred by a question of jurisdiction which it is plain cannot be affected by any further proceedings. Therefore the present application should be denied and the bill dismissed.

Let a decree be entered denying the application for an interlocutory injunction, dismissing the bill without prejudice, and awarding costs to the respondents; the respondents to file a draft decree therefor on or before November 26, 1910, and the complainants corrections thereof on or before November 30, 1910, as directed by rule 21.