# CHARLESTON.

## WHAN v. HOPE NATURAL GAS CO.

**Submitted October 30, 1917.   Decided November 13, 1917.**

1. COURTS—*Stay of Proceedings—Adjudication by Foreign Court.*

    A proceeding in attachment, coupled with the process of garnishment, sued out in a court of general jurisdiction in another state against a debtor, whose assignee, with knowledge thereof, though not cited to appear therein by publication or personal service of process, institutes in a court of this state an action to recover the debt involved, assigned to him before the proceeding began in the foreign court, presents the question of the priority of right between the assignee and the attaching creditor of his assignor in such court, and is to be determined by it upon legal principles obtaining in that jurisdiction, the adjudication, of which, as a matter of comity and to avoid conflict of decisions to the detriment of the garnishee, belongs to such court; and the prosecution of the action in this state should be postponed pending such adjudication by the foreign court. (p. 341).

2. INTERPLEADER—*Stakeholder—Claimants.*

    Though sometimes a stakeholder without fault must diligently require adverse claimants of the fund held by him to interplead, to avoid a liability to each of them, that rule applies generally only when he is threatened by ordinary actions, as debt or assumpsit, without attachment. But when the fund is seized by one of the claimants through judicial process, there is a duty on the part of the other claimant to intervene for his own protection and to prevent impairment of such right as he might have adjudicated therein. (p. 345).

3. ABATEMENT AND REVIVAL—*Courts—What Constitutes—Stay of Postponement—Adjudication by Foreign Court.*

    While the pendency of a foreign attachment, attended by garnishment, will not abate an action in another court subsequently brought for the same debt, it will, when properly pleaded, effect a stay or postponement of the trial of the second proceeding to await the determination of the foreign attachment. (p. 346).

4. GARNISHMENT—*Retention of Fund.*

    Where a creditor has by garnishment acquired a lien on a fund or debt payable to another, the garnishee can not lawfully pay it to the plaintiff in a subsequent action, but must retain it in his hands subject to the process served upon him. (p. 341).

5.  ASSIGNMENTS — *Contracts* — *Debt* — *Consideration* — *Conditions Precedent.*

> The verbal promise of a debtor to pay the assignee of a claim, upon performance by him of conditions precedent to the maturity of the cause of action, binding upon his assignor, will not, because without consideration, support an action based on such promise.  The assignee can not recover the debt assigned, except upon performance of the obligations of his assignor, by contract made conditions precedent to the maturity and payment of such debt.  (p. 341).

Error to Circuit Court, Wood County.

Action by S. M. Whan against the Hope Natural Gas Company.  From a judgment for plaintiff, defendant brings error.

*Reversed, verdict set aside, and stay of proceedings granted.*

*A. B. Fleming, Charles Powell,* and *Kemble, White,* for plaintiff in error.

*F. P. Moats,* for defendant in error.

LYNCH, PRESIDENT:

Should the prosecution of the action in which the judgment complained of was rendered be stayed until the common pleas court of Alleghany county, Pennsylvania, a court of general jurisdiction, shall determine to which of two adverse claimants Hope Natural Gas Company, that incurred the liability, ought to be required to pay the money due thereon— S. M. Whan, the assignee of his father and brother, doing business together as W. S. Whan & Son, or National Supply Company, a creditor of the partnership?

Hope Natural Gas Company, a corporation chartered and organized under the authority of the laws of this state, but whose general offices and place of business are located in Pittsburgh, Pennsylvania, and whose president and treasurer reside therein, contracted with W. S. Whan & Son to drill for it a well for oil and gas on the A. J. Smith farm located in Harrison county, this state, upon the condition that the consideration therefor was not to be due and payable until the completion of the well, free and acquit of liability for

material and supplies, such as might become the subjects of liens under the mechanics' lien laws of this state. The well was finished August 11, 1915. More than one month before, that date, on July 3, Whan & Son assigned the drilling account to the plaintiff, who by a letter of July 6 advised Hope Natural Gas Company of the transaction, resulting in the assignment in the nature of an order for payment, which he therein enclosed, and requested the company to retain in its hands, until due according to the drilling contract, the money to become payable thereon. To this letter that company replied, informing him it could not accept the order until the well was completed according to the express terms of the agreement.

The National Supply Company, a foreign corporation doing business and subject to legal process in this state, on July 16, 1915, sued out a foreign attachment in assumpsit in the common pleas court of Alleghany county, Pennsylvania, against Whan & Son to recover upon an account filed, alleged to be due from them to it, and at the same time directed process in garnishment against Hope Natural Gas Company, alleged therein to be indebted to them. This process the sheriff of that county served on the day it was issued; and the company appeared thereto according to its mandate, and in its answer stated the facts detailed, the creation of the debt, its assignment, the name of the assignee, his residence and the residence of his assignors, and the balance due. If free from fraud and established by proof, these facts were sufficient to enable that court to determine all questions of priority as regards the real ownership of the money due and the rights of the claimants in the proceedings, either upon proper service or personal appearance therein.

Of these proceedings, and of the extent and purport of its answer, the garnishee informed Whan & Son promptly; and S. M. Whan admits he had knowledge thereof soon after they were instituted, although not proceeded against by publication or served with process to answer. Notwithstanding the pendency of that action and the seizure of the fund, S. M. Whan brought this action on the drilling account, and recovered judgment for the money due thereon, and now con-

tends that it was the duty of Hope Natural Gas Company to convene him and National Supply Company in one or the other of these courts and require them to interplead, and that, as it failed to resort to this procedure, it can not now complain. This course defendant did not pursue, if indeed such was its duty; but it did appear in the Wood circuit court, entered the general issue plea, tendered and was permitted to file an exemplification of the record of the foreign action so far as it then had proceeded, and moved, and its motion the court sustained, to stay the action until the common pleas court should finally determine and adjudicate the matters therein in issue, in so far as they affected the rights of the litigant parties and its duty towards them. But afterwards, upon motion of the assignee, the court dissolved the stay, with leave to file by way of addenda an exemplification of the interim record in the foreign court. This it did within the time allotted, and then renewed its motion for a further stay, which was denied.

The important facts so disclosed are the actual seizure of the fund in controversy by a foreign court having jurisdiction and competency to condemn the fund, then clearly within reach of its process, and to adjudicate between the adverse claimants thereof in the attachment proceedings and all other questions that may arise therein; and that the fund seized is as much within the power and control of the tribunal as if it were actually paid into the coffers of its treasury.

There is no procedure recognized by law, devised or suggested, whereby to divest or supersede the possession so acquired. The rule that whenever a conflict arises between courts, whether of the same or different states, as to any species of personal property, the one first acquiring jurisdiction may lawfully retain it to the end of the litigation unmolested, is one of general application, according to abundant authority. Another rule of equal moment and generality, and as well sustained, is that the seizure of a chose in action or other species of personal property, in a lawful manner and for lawful purposes, so as to appropriate it finally to the satisfaction of a decree or judgment, withdraws the subject matter from every court other than the one so exercising juris-

diction, which has the right to retain such control as is requisite to effectuate a final judgment or decree, free from the interference of every other tribunal. *State* v. *Fredlock,* 52 W. Va. 232; *Prewett* v. *Bank,* 66 W. Va. 184; *Railroad Co.* v. *Adelbert College,* 208 U. S. 38; *Hillis* v. *Asay,* 105 Ill. App. 667; *McKay* v. *Van Kleck,* 133 Mich. 27; *State* v. *Reynolds,* 209 Mo. 161. This rule the supreme court of Pennsylvania approves, and in *Bank* v. *Smith Construction Co.,* 227 Pa. 35, says: ''When a court has by lawful proceedings taken possession of specific property, it has during that possession, and as incident thereto, jurisdiction to hear and determine all questions respecting the title, possession and control thereof, and courts of coordinate jurisdiction are powerless to render any judgment or decree that will invade or disturb the possession of the property while it is in the possession of the court which has thus first acquired it.'' For the recognition and application of the same principle, as between state and federal courts operating in the same territory, see *Thiel* v. *McClure,* 130 Fed. 55; *Hull* v. *Ames,* 182 Fed. 1008; *Dodds* v. *Tunnel Co.,* 188 Fed. 447; *State* v. *Fredlock,* 52 W. Va. 232; *Ford* v. *Watts,* 95 Va. 192. Whether denominated reciprocity, comity or necessity, the principle is imperative, because essential to the orderly administration of justice. It avoids the conflict, confusion and imposition that inevitably may follow or result from the encroachment by one court upon the jurisdiction of coordinate tribunals assuming to act in the same matter, whether they be within the same or different state governments. Necessarily, any other course may, and often would, produce unjust if not disastrous results, rather than promote that justice which courts are ordained to administer.

Though the facts differ somewhat in the two cases, *Prichard* v. *Critchlow,* 56 W. Va. 547, recognizes and applies the same necessity. There payment of the debt admittedly due was restrained by the same process sued out of the common pleas court of Greene county, Pennsylvania, by one creditor, and later by other creditors of the common debtor in Marion county, this state; and this court held: ''Proceedings on junior attachments against a garnishee should be stayed until

proceedings on senior attachments against the same garnishee are determined, unless the amount garnisheed is sufficient to satisfy both sets of attachment.  *  *  As a matter of comity and to avoid confusion and conflict of decisions to the detriment of the garnishee, the proceedings under the jurisdiction of the courts of this state should be stayed until the matter of priority is settled by the courts of Pennsylvania having jurisdiction thereof''.

But this decision, it is argued, does not control the questions raised in this case; because here, it is claimed, the garnishee promised payment of the claim asserted after it had knowledge of and had appeared to and answered the process of garnishment awarded by the Pennsylvania court. To this contention there are two obvious answers. This action apparently was not predicated upon that promise. It was verbal, and not disclosed except upon the redirect examination of plaintiff, he having when cross-questioned repeatedly stated that he brought the action upon the drilling contract. On it his assignors would have been compelled to rely had they sued. Their cause of action arose out of it. Certainly he had no right superior to theirs, unless there was a promise such as that claimed, based upon a valuable consideration.

But, admitting exclusive reliance on that promise, there was no consideratioin therefor, and no attempt to prove any different from that required of Whan & Son in the original agreement. They were to pay and exhibit receipts for the payment of all charges and debts incurred in performing it, for which any liability might rest upon the garnishee, before the contract price for the well became due and payable. It was compliance with these requirements as a condition precedent to payment to the assignee, demanded by the garnishee, that is said to constitute the consideration for the subsequent promise. Compliance with a demand to do the things without which payment was not enforcible is not a new consideration. Certainly, if Whan & Son could not maintain an action based on the contract until its conditions were satisfied, plaintiff could not do so. His rights as assignee can not be superior to theirs. He or they must do the things the contract required before demanding payment. Performance of

these express conditions can not stand as the predicate of a new promise to pay. *Thomas* v. *Mott*, 74 W. Va. 493; *Vance* v. *Ellison*, 76 W. Va. 592. Payment by the assignee of the obligations assumed by his assignors did nothing more than mature his right of action.

Again, the claim is made that, as the account was assigned before the fund was attached, the foreign court acquired by the attachment no jurisdiction of or control over it. That may be true; but, if it is, the foreign court has the authority and right to determine and adjudicate that question. It may, upon proper pleadings and proof, discover defects therein, and cancel, ignore or disregard it. *Bane* v. *Doney*, 53 Pa. Super. 435, 438; *Knight* v. *Guffey*, 161 Ill. 85; *Copeland* v. *Manton*, 22 Ohio 398; 20 Cyc. 1012. These are, therefore, questions to be adjudicated, not by this or the circuit court, but by the court which first laid its hands upon the fund. That court has ample power to settle them.

But it is contended that, as the parties in the two actions are not identical, the judgment of either court would not bind the other. *Dunfee* v. *Childs*, 59 W. Va. 225, cited, does not deal with a similar situation. There can not always be an exact identity of parties in actions to warrant a stay. There was none in the Prichard case. The fund and the garnishee were the same; otherwise the parties were not the same. The claimants of the fund were different. Surely, the rule contended for, that unless the parties be identical proceedings in one court do not warrant a stay in another action later brought to recover the same fund, can not obtain. Parties to such actions may be, but frequently are not, the same in each case. Want of identity is not an insuperable objection to effect a stay. It was not in the Prichard case. Besides, what effect such judgment as may be recovered in the common pleas court may have when pleaded in this action, we do not undertake to decide at this time. That question does not arise.

Finally, as to the duty to require the plaintiff in each of the two actions to appear and interplead their claims in one of them, or in a proceeding independent of both. This right may be conferred by §1, ch. 107, Code, and authorized under

the rules of equity procedure. The word "may", used in the statute, means "must", it is argued. Stated differently, as contended, the section means that the defendant must proceed as therein authorized, whenever he does not wish to defend the action for the debt or property for which it was brought, because claimed by another with whom he does not collude, but is ready to pay the money or deliver the property to the owner thereof as the court may direct. Whether that is its correct meaning and purpose, it is unnecessary now to say; because defendant did resort to and now claims the benefit of the protection afforded to suitors similarly situated by §6, ch. 136, Code. Agreeably with its express terms, there appears the pendency of the foreign attachment, wherein the defendant is garnishee upon the same debt, and of which plaintiff knew when he brought this action and that the rights of the parties therein remained undetermined. If these provisions are not meaningless and not intended to serve any useful purpose, it is difficult to perceive to what situation they were intended to apply, if not to this one. Manifestly, injustice must ensue if, as plaintiff contends, defendant must pay the same debt twice if the court renders judgment against it in each of the two actions and neither can operate as an off-set to the other. If defendant, as contended, can be compelled by execution to satisfy the judgment in this action, and the common pleas court appropriates to the satisfaction of the claim of the National Supply Company the money seized by that court, a stay of one or the other of the actions seems imperative to avoid the consequences so deemed inevitable. . To us it seems the statute had for its object the remedy which appears to suit so well and obviate the danger threatened by the situation confronting us.

There can be no doubt that, under certain circumstances, a stakeholder must diligently exercise his right to require rival claimants of a fund to settle their controversy by an interpleader; nor that his failure so to do may subject him to a double liability. But that rule has no application here. It applies where he is threatened by two ordinary actions for the recovery of money judgments, as debt or assumpsit, without attachment. When the fund is seized by one of the claim-

ants through judicial process, there is a duty on the part of the other to intervene for his own protection. In proceedings *in rem*, all claimants must resort to the court which has the *res* within its jurisdiction by seizure. This modifies and limits the doctrine of interpleader, or constitutes an exception thereto. That is the theory of the Prichard case, though not clearly disclosed. Rather it is assumed to exist, without stating it. It proceeds as if that was the recognized rule of decision.

Whatever confusion may have arisen among the authorities dealing with similar controversies, the conflict seems primarily to be due to the failure to differentiate between the right to abate and the right to stay. The pendency of attachment proceedings will not abate the subsequent action, but will authorize and effect a stay or suspension to await a determination of the proceedings in garnishment. *Lumber Co.* v. *Joannin-Hansen Co.*, 99 Minn. 305, and note 9 Ann. Cas. 478; and note to *Railway Co.* v. *Housely*, 40 Ann. Cas. 365. The action ought not to be permitted to abate, because thereby great injustice may result to the plaintiff therein pending such determination. It should be stayed or suspended; because a garnishee not at fault ought to have protection in some manner against the danger of payment of the same debt twice, and from embarrassment by a multiplicity of processes. The reason of the rule is given and the necessity of its application recognized in the citations given and other cases, upon facts quite analogous to the facts here involved. In *McFadden* v. *Donnell*, 18 Cal. 160, it is said: "The proper course is to order a suspension of the action by the original creditor until the proceedings of the attachment creditor are disposed of. This order of suspension is enough to secure the rights of all concerned."

As early as 1809, Chancellor Kent, in *Embree* v. *Hanna*, 5 Johns. 101, gave expression to the same principle. The plaintiff, an assignee, sued in the name of himself and the assignor to enforce payment of the debt assigned, which theretofore their creditor had attached in a Maryland court, and, as here, the attachment proceedings there remained undetermined, and no process issued to bring in the plaintiffs in the New

York action.   The chancellor said, *arguendo:* "The attachment of the debt in the hands of the defendant fixed it there (in Maryland) in favor of the attaching creditor; the defendant could not lawfully pay it over to the plaintiff.   The attaching creditor acquired a lien upon the debt binding upon the defendant, and which the courts of all other governments, if they recognize such proceedings at all, can not fail to regard".   See also *Crawford* v. *Slade,* 9 Ala. 887.

Wherefore, we are of opinion to reverse the judgment, annul the verdict, and stay proceedings in the action until the right to the fund is determined by the Pennsylvania court in the proceeding therein instituted and now pending.

*Reversed, verdict set aside, and stay of proceedings granted.*